K & K FARMING, INC., A NEBRASKA CORPORATION, APPELLANT AND CROSS-APPELLEE, V. FEDERAL INTERMEDIATE CREDIT BANK OF OMAHA, APPELLEE AND CROSS-APPELLANT.

468 N.W.2d 99

Filed April 12, 1991.   No. 89-048.

Michael G. Helms and Mark R. Scherer, of Schmid, Mooney & Frederick, P.C., for appellant.

William G. Dittrick and Anne M. O'Brien, of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

K & K Farming, Inc. (K & K), the plaintiff in the trial court, appeals a district court determination in favor of the defendant, Federal Intermediate Credit Bank of Omaha (FICB), that K & K has no interest in a particularly described 2,560 acres of real estate in Rock County, Nebraska, and no right to the rents and profits derived therefrom. We affirm.

In disposing of this ejectment action, the district court for

Rock County also found that K & K is estopped from claiming title, possession, or control of the property.

In an action for ejectment there is no burden on the defendant to show title, but the plaintiff must show title in the plaintiff. See *Nuttelman v. Julch*, 228 Neb. 750, 424 N.W.2d 333 (1988). A plaintiff in an ejectment action must prevail, if at all, upon the strength of his own title and not upon the weakness of his adversary's title. *Kozak v. State*, 189 Neb. 525, 203 N.W.2d 516 (1973), *overruled on other grounds*, *Lillich v. Lowery*, 211 Neb. 757, 320 N.W.2d 463 (1982); *Comstock v. Kerwin*, 57 Neb. 1, 77 N.W. 387 (1898).

Since an action in ejectment is one at law, a trial court's findings will not be set aside on appeal unless clearly wrong. *Griggs v. Oak*, 164 Neb. 296, 82 N.W.2d 410 (1957). See, also, *Metropolitan Utilities Dist. v. Pelton*, 236 Neb. 66, 459 N.W.2d 193 (1990). In reviewing the judgment awarded in a bench trial of a law action, the Supreme Court does not reweigh evidence, but, rather, it considers the evidence in the light most favorable to the successful party, and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Howells Elevator v. Stanco Farm Supply Co.*, 235 Neb. 456, 455 N.W.2d 777 (1990); *Wurst v. Blue River Bank*, 235 Neb. 197, 454 N.W.2d 665 (1990).

## FACTUAL BACKGROUND

The history of this action is best understood if reviewed in chronological order. Considered in the light most favorable to the successful party, FICB, the facts are as follows: In 1972, K & K was incorporated for the purpose of conducting farming operations. Gerald R. Kirwan, Jr., was the president and sole shareholder of K & K. Between 1973 and 1974, Kirwan and his wife, Leona, through land contracts, purchased the subject real estate, comprising 2,560 acres in Rock County, Nebraska. Upon completion of payments over a 10- to 20-year period, the Kirwans were to receive warranty deeds which were placed in escrow.

On March 5, 1980, the Kirwans assigned their interest in the land contracts to the Valentine Production Credit Association

(PCA) as security for loans to be used for annual operating expenses, which loans subsequently were drawn against a $4.7 million line of credit. In subsequent years, the line of credit and the Kirwans' indebtedness increased. Later, during the 1982 crop season, Kirwan pledged his stock in K & K to Galyen Petroleum Company (GPC) to secure the payment of a fuel bill in excess of $300,000.

On November 1, 1982, Kirwan recorded a "Notice of Contract of Sale" in the Rock County register of deeds' office. That filing gave notice of a purported contract of sale in which the Kirwans had agreed to sell the subject property, along with other real estate, to K & K.

With the downturn in the farm economy, the Kirwans were forced to file a chapter 11 bankruptcy petition in early 1983. Thereafter, the Kirwans defaulted on the PCA loan, and on August 10, 1984, PCA transferred the security assignments to the FICB.

On November 7, 1985, in order to foreclose on the K & K stock, GPC filed a "Motion for Relief from the Automatic Stay" in the Kirwans' bankruptcy proceeding. FICB filed an objection to this motion. Relying upon a stipulation executed by Richard Galyen, president and shareholder of GPC, individually and as an officer of the corporation, that GPC's interest in the bankruptcy estate was limited to the stock of K & K, FICB withdrew its objection. The stipulation contained a list representing all of K & K's assets. The list contained no real estate.

Threatened with foreclosure of the subject property by FICB, the Kirwans executed and delivered a conveyance of the subject property to FICB on February 26, 1986. The next day, FICB paid off the balances due on the original land contracts and subsequently recorded the deed the Kirwans had given it.

Subsequent to July 7, 1987, Galyen personally became the sole stockholder of K & K. On October 26, 1987, K & K filed an action in the district court for Rock County to eject FICB from the subject property. In its petition, K & K alleged it owned the subject property and alleged two causes of action: (1) that FICB should be ejected and (2) that K & K had a right to rents collected since FICB's possession. A separate interpleader

action by third-party lessees was consolidated for trial with K & K's suit. The lessees tendered their rental payments to the clerk of the district court for Rock County, pending the outcome of the action between K & K and FICB. It was stipulated that the rentals were to be paid to the successful party in K & K's ejectment case.

Following trial of the ejectment action, the district court issued its judgment on December 16, 1988, holding in substance that K & K had no interest in the subject property and dismissing K & K's ejectment petition with prejudice. The court also found in the lessees' interpleader case that the funds paid by the lessees of the subject property to the clerk of the district court should be paid to FICB.

## ASSIGNMENTS OF ERROR

In its appeal, K & K claims the trial court erred (1) in holding that K & K is estopped from asserting its interest in the subject property and (2) in holding that FICB has a continuing valid interest in the subject property.

In reference to its first assignment of error, K & K argues that it made a prima facie showing of its claimed interest in the subject property.

The essential elements of an action for ejectment are legal estate, a right of possession in the plaintiff, and unlawful detention by the defendant. *Johnston v. Robertson,* 171 Neb. 324, 106 N.W.2d 192 (1960); Neb. Rev. Stat. § 25-2124 (Reissue 1989). Through the testimony of Kirwan and Patrick Moylan, a former attorney, K & K attempted to prove that on November 1, 1982, the Kirwans, by written land contract, sold the subject property, along with an additional 5,300 acres, to K & K, as evidenced by a recorded notice.

K & K argues that a recorded notice of a contract of sale is prima facie evidence of a vendee's interest in the subject real estate. Neb. Rev. Stat. § 76-238 (Reissue 1990) provides, in pertinent part:

> All deeds, mortgages and other instruments of writing which are required to be or which under the laws of this state may be recorded, shall take effect and be in force from and after the time of delivering the same to the

register of deeds for recording, and not before, as to all creditors and subsequent purchasers in good faith without notice . . . .

Relying on this statute, K & K claims that "[t]he necessary and logical effect of this statutory language is that a recorded instrument evidencing an interest in real property is sufficient to <u>at least</u> establish prima facie evidence of the interest expressed therein, as against subsequent creditors or purchasers." Brief for appellant at 10. The trial court stated that K & K had not proved a prima facie case.

The recorded notice was merely a memorandum intended to satisfy the statute of frauds. Neb. Rev. Stat. § 36-105 (Reissue 1988). The memorandum required by the statute of frauds is evidence of an oral contract and must contain the essential terms of the contract. *Heine v. Fleischer*, 184 Neb. 379, 167 N.W.2d 572 (1969). Generally, the memorandum should contain the names of the parties, a description of the land, the price, the general terms of the agreement, and the signature of the vendor. Here, the essential element of price was missing. The memorandum is not the contract, but only written evidence of an oral contract. *David v. Tucker*, 196 Neb. 575, 244 N.W.2d 197 (1976); *Ord v. Benson*, 163 Neb. 367, 79 N.W.2d 713 (1956). Thus, the contract, not the recorded notice, is controlling. In any event, K & K was not relying upon an oral contract. All of K & K's evidence reflected that the purported sale of the subject property was accomplished through a purported written contract which had been lost.

In holding for FICB and in dismissing K & K's petition with prejudice, the trial court declared:

In short, after considering all of the evidence, I simply do not accept the [sic] Kirwan[']s and Moylan[']s testimony that tends to establish the plaintiff [K & K] purchased the real estate from the Kirwans in 1982, or at any other time. The inability to produce a written contract is not controlling. The absolute absence of any act after November 1, 1982, that would tend to support a claim of ownership by the plaintiff on one hand, and the numerous acts and statments [sic] of Kirwan tending to show, or actually showing, a claim of ownership of the land by

Kirwans woud [sic] probably be convincing. When the positive statements of Kirwan in the bankruptcy proceeding are added, any trier of fact would be compelled by the evidence to determine that there was no sale of the real estate by Kirwans to the plaintiff.

Under the facts of this case, in the absence of the alleged contract of sale between K & K and the Kirwans, K & K has no interest whatsoever in the subject property. The trial court found there was no sale of the real estate by the Kirwans to K & K. On the other hand, at trial, deeds were produced showing that the Kirwans had conveyed the subject property to FICB for valuable consideration. There can be no question from the evidence and the trial court's findings that FICB's title to the subject property is superior to that of K & K, which the court found had no interest in or title to the subject property.

In support of its conclusion, the trial court specifically found from the evidence that (1) no contract for the sale of the subject property from the Kirwans to K & K was produced at trial; (2) the Kirwans continued to operate the land as their own until they filed voluntary bankruptcy on January 25, 1983; (3) the subject real estate was treated as one of their personal assets in the bankruptcy estate, and the debts for the balance of unpaid contract payments were shown as secured debts in the bankruptcy schedules filed by the Kirwans; (4) taxes on the real estate were paid by the Kirwans personally, and the Kirwans, not K & K, received the rents and profits from the land; (5) K & K agreed to farm the land for the Kirwan bankruptcy estate in 1985; and (6) in numerous places where a corporation would list real estate it owned as an asset, K & K did not list any of the subject real estate. The record supports all of these factual findings by the trial court.

Further, the record is uncontroverted that (1) K & K's corporate federal income tax returns for the tax years ending February 28, 1983, and February 29, 1984, do not list the subject property as an asset; (2) at a meeting of creditors before the bankruptcy court, Kirwan testified that K & K never owned the property in question; (3) in an October 15, 1985, K & K financial statement prepared by Kirwan, no mention is made of the subject property as an asset of K & K; (4) Kirwan testified

under oath that he did not believe there were any assets belonging to K & K that were not on the October 15, 1985, financial statement; (5) pursuant to a custom farming agreement, the Kirwans' bankruptcy estate received rental income from the subject property during 1985; (6) in a K & K financial statement for the 3-year period ending February 28, 1985, prepared by Peat, Marwick, Mitchell & Co. (PMM) for FICB, no land was listed as a corporate asset, nor were the land contract sellers listed as corporate liabilities; (7) in a letter dated April 11, 1985, from Kirwan, as president of K & K, to PMM, Kirwan states that he has "no reason to believe that these [PMM] financial statements require any adjustments so that they would not be misleading if relied upon by other individuals"; (8) Kirwan testified that he could not remember whether the alleged written contract between the Kirwans and K & K, which he claimed to have prepared, was an outright sale of the land or the sale of the Kirwans' land contract interest; (9) Kirwan testified that no payments were ever made by K & K to the original land contract sellers while he owned K & K; (10) the original land contract sellers never approved the alleged sale of the subject property from the Kirwans to K & K, nor were they or FICB notified of this alleged transaction; (11) in a deed and assignment of February 26, 1986, and subsequent warranty deeds of February 27, 1986, the Kirwans transferred all rights and ownership in the land contracts to FICB; (12) in the deeds of February 27, 1986, which the Kirwans executed, acknowledged before a notary public, and delivered to FICB, they covenanted that they were "lawfully seised of such real estate [the subject property] and that it is free from encumbrances subject to all matters of record," that they had "legal power and lawful authority to convey the same," and that they warranted and covenanted to "defend title to the real estate against the lawful claims of all persons"; (13) in February 1983, the Kirwans listed the subject property on their asset schedule when they filed their bankruptcy petition; (14) although required to list in their bankruptcy schedules all transfers of real estate within the year prior to the filing of their bankruptcy petition, i.e., from February 1982 to February 1983, the Kirwans did not list the subject property or the alleged

contract of sale from the Kirwans to K & K allegedly executed on November 1, 1982; and (15) to the best of Kirwan's knowledge only he, as an individual, and FICB paid property taxes on the subject property after November 1, 1982.

K & K introduced into evidence a check of K & K's in the sum of $10,000, dated November 1, 1982, and made payable to and cashed by Kirwan. The check was executed by Kirwan on behalf of K & K. The appellant claimed that the check was the consideration paid to the Kirwans pursuant to the purported November 1, 1982, written land contract of sale. Testimony for that proposition was elicited from Kirwan. No notation was made on the check that it was payment under a land contract. It is implicit in the trial court's order that the trial court discounted Kirwan's testimony that the check was paid as consideration for the purported land contract.

From the facts found by the trial court, the uncontroverted facts found in the record, and the trial court's nonacceptance of the credibility of the testimony of K & K's two primary witnesses, we cannot say that the trial court was clearly wrong in holding for FICB, in finding that K & K had no interest in the subject real estate, in dismissing K & K's ejectment petition with prejudice, and in ordering the rentals in the hands of the clerk of the court and the interest thereon to be set over to FICB.

We recognize that the trial court in deciding this case stated that K & K had not presented a prima facie case and that even had K & K presented a prima facie case, it was estopped from claiming title, possession, or control of the subject property. These conclusions were not necessary to the ultimate finding of the trial court that K & K had no interest in the subject property. Where the record demonstrates that the decision of the trial court is correct, although such correctness is based on different grounds from those assigned by the trial court, the Supreme Court will affirm. See *Weimer v. Amen*, 235 Neb. 287, 455 N.W.2d 145 (1990). A correct result will not be set aside merely because it was based upon incorrect reasoning. *In re Application A-16642*, 236 Neb. 671, 463 N.W.2d 591 (1990).

In a cross-appeal, FICB complains of evidentiary rulings by the trial court. Because of the disposition of this appeal, we need not address FICB's assignment of error.

Claiming that the lawsuit filed by K & K and its appeal to this court are frivolous, FICB requests that this court, pursuant to Neb. Rev. Stat. § 25-824 (Reissue 1989), award it attorney fees. Under this statute, attorney fees are allowable if a lawsuit or appeal is frivolous. Since the trial court made no ruling on FICB's request for attorney fees in that court, we will not consider allowing attorney fees for services in the trial court. An issue not presented to and passed upon by the trial court may not be raised on appeal. *Hensman v. Parsons*, 235 Neb. 872, 458 N.W.2d 199 (1990). The facts in this appeal do not warrant a finding that the appeal was taken frivolously.

AFFIRMED.

CAPORALE, J., not participating.