FIRSTIER BANK, N.A., A BANKING CORPORATION, APPELLEE, V.
RICHARD L. TRIPLETT AND CORALEA J. TRIPLETT, APPELLANTS.
497 N.W.2d 339

Filed March 5, 1993.   No. S-90-581.

Gregory P. Drew for appellants.

Wyman E. Nelson for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

FAHRNBRUCH, J.

After finding that Richard L. and Coralea J. Triplett had not fully paid a promissory note they had given for money they borrowed from FirsTier Bank, N.A., the district court for Washington County entered a $7,231.55 judgment in favor of FirsTier and against the Tripletts.

At trial and in this appeal, the Tripletts, who are husband and wife, contend that their debt was satisfied when their note was marked "paid" and mailed to them by FirsTier. The trial court found that the note was unintentionally marked "paid" and mailed to the Tripletts as a result of clerical error and without

the bank's authority.

## ASSIGNMENT OF ERROR

Restated, the sole issue on appeal is whether the district court erred in granting a money judgment on a promissory note that had been marked "paid" and returned to the maker.

## SCOPE OF REVIEW

Discharge of a negotiable instrument such as a promissory note is governed by the Uniform Commercial Code. See Neb. U.C.C. § 3-605 (Reissue 1980). An action under the Uniform Commercial Code is one at law. See, Neb. U.C.C. § 1-101 et seq. (Reissue 1992); *First Nat. Bank & Trust Co. v. Hughes*, 214 Neb. 42, 332 N.W.2d 674 (1983). Regarding a question of law, an appellate court has an obligation to reach a conclusion independent from a trial court's conclusion in a judgment under review. *Young v. Dodge Cty. Bd. of Supervisors, ante* p. 1, 493 N.W.2d 160 (1992); *Maack v. School Dist. of Lincoln*, 241 Neb. 847, 491 N.W.2d 341 (1992).

In a bench trial of a law action, a trial court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. In reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party, who is entitled to every reasonable inference deducible from the evidence. *Young v. Dodge Cty. Bd. of Supervisors, supra*; *Ballard v. Giltner Pub. Sch.*, 241 Neb. 970, 492 N.W.2d 855 (1992); *K & K Farming v. Federal Intermediate Credit Bank*, 237 Neb. 846, 468 N.W.2d 99 (1991).

## FACTS

At trial, two original promissory notes the Tripletts gave to FirsTier were referred to as exhibits 7 and 8. Exhibit 7, dated April 17, 1986, was for $14,000. It was secured by a 1985 Toyota pickup and a 1979 Lincoln automobile and was originally due April 20, 1990. By subsequent agreement, the due date was extended to June 20, 1990. Exhibit 8, dated June 16, 1987, was for $3,500. The note was secured by a 1979 Ford van.

The Tripletts sold the Toyota, and on July 6, 1987, Richard Triplett tendered a check for $7,200 as payment on the notes to

FirsTier's branch at Blair, Nebraska. At the time the check was tendered, the balances were $10,498.79 on exhibit 7 and $2,418.73 on exhibit 8.

In late July 1987, the Tripletts received a letter from FirsTier containing an original "Note and Security Agreement," exhibit 7, which was stamped "PAID . . . FirsTier Bank, N.A. Omaha, Nebraska." The stamp was signed by a clerk and hand dated "7-7-87." In November 1987, exhibit 8 was returned to the Tripletts. It also was stamped "PAID . . . FirsTier Bank, N.A. Omaha, Nebraska," and hand dated "7-7-87," but was signed by another clerk.

At trial, a bank officer testified that when a note has been paid in full, it is FirsTier's practice to send a computer-generated form letter over the original loan officer's name, thanking the customer for his or her business. He testified that the loan officer never sees or signs these letters, which he believed were signed by a clerk.

Richard Triplett testified that more than a year after receiving the last note, he received notice from FirsTier that the Tripletts still owed money on one of the notes. When FirsTier demanded payment of the note, Richard Triplett indicated to FirsTier that "the loan was paid up."

In May 1989, FirsTier sued the Tripletts for payment of the balance remaining on exhibit 7, for reformation and reinstatement of the erroneously canceled note, and for reinstatement of FirsTier's security interest.

At trial, Leonard Olson, FirsTier's vice president and manager of loan operations, testified that exhibit 7 had never been paid in full, although regular payments had been made until one large payment of $4,781.27 was made on July 6, 1987. At the time of trial, exhibit 7 had an outstanding balance of $7,231.55, representing $5,717.52 in principal plus accrued interest, which continued to accrue at a rate of 10 percent, or $1.57 per day. Olson also testified that with the payment of $2,418.73 on July 6, 1987, exhibit 8 was paid in full.

Olson testified that through clerical error, the file for exhibit 7 was pulled instead of the file for exhibit 8 and that a clerk erroneously marked exhibit 7 "paid." Olson testified that the employee who marked exhibit 7 "paid" was a loan service clerk,

one step above an entry-level position. According to Olson, the loan service clerk did not have authority to release a note which had not been paid in full, and FirsTier never intended to discharge exhibit 7 without payment in full. Both Olson and Lloyd Sheve, vice president and manager of FirsTier's Blair branch, testified that only the bank's collection department could authorize the release of an unpaid note, and they testified that neither of them had ever received authorization to settle and release exhibit 7.

In spite of Richard Triplett's initial representation to FirsTier that "the loan was paid up," the Tripletts do not dispute the fact that exhibit 7 has never been paid in full. Both of the Tripletts testified that they knew the $7,200 check was insufficient to pay off the balances of both notes. Richard Triplett testified that he had made no representations to FirsTier that he was paying off both notes. He testified that he did not know whether FirsTier had made an error in releasing exhibit 7.

Instead, the Tripletts alleged that exhibit 7 was discharged pursuant to § 3-605 (Reissue 1980) by (1) intentional cancellation of the note which was not a result of a mutual mistake or a unilateral mistake caused by the Tripletts' fraud or inequitable conduct and (2) surrender of the note.

The district court made specific factual findings that

at the time of the $7,200.00 payment by the Defendants [Tripletts] to the Plaintiff [FirsTier], the Defendants specifically acknowledged and knew that said $7,200.00 was insufficient to make payment in full on both promissory notes . . . . [T]here was no intent on the part of FirsTier Bank to release promissory note [exhibit 7] for less than payment in full thereof, there was no agreement nor consideration to support same that promissory note [exhibit 7] would be released without payment in full, the stamping of [exhibit 7] as paid in full and the return thereof to the Defendants was as a result of a clerical error, allowing said release of promissory note [exhibit 7] would result in unjust enrichment to the [Tripletts], and the individual in the clerical position stamping promissory notes for return to bank customers did not have the authority or power to authorize the release of promissory

notes without payment in full thereof.

The court entered a $7,231.44 judgment, plus interest and costs, in favor of FirsTier on its first cause of action and granted no relief on the second and third causes of action. The Tripletts appealed. FirsTier did not cross-appeal.

## ANALYSIS

The Tripletts claim that their debt on exhibit 7 was discharged as a matter of law under § 3-605(1) (Reissue 1980) because FirsTier marked exhibit 7 "paid" and returned it to them. FirsTier counters that a promissory note is not discharged when it is canceled as the result of clerical error by a party who has no authority to release a loan. The bank's position is that such an action does not constitute intent to cancel the maker's indebtedness and that therefore there was no discharge of the note.

Section 3-605 governed the discharge of negotiable instruments through cancellation or renunciation at all times material to this case. That statute provided in part:

(1) The holder of an instrument may even without consideration discharge any party

(a) in any manner apparent on the face of the instrument or the indorsement, as *by intentionally cancelling the instrument* or the party's signature by destruction or mutilation, or by striking out the party's signature; or

(b) by renouncing his rights by a writing signed and delivered or *by surrender of the instrument to the party to be discharged.*

(Emphasis supplied.)

Whether a promissory note is discharged pursuant to the Uniform Commercial Code when it is marked "paid" and surrendered to the maker is a question of first impression in Nebraska. Other jurisdictions have considered the question, and their opinions are persuasive in deciding this case.

Because FirsTier both stamped exhibit 7 "paid" and surrendered it to the Tripletts by mailing it back to them, we must consider whether either of these actions by FirsTier had the effect of discharging the Tripletts' indebtedness under the note.

Subsection (a) of § 3-605(1) clearly stated that cancellation must be done "intentionally." Courts that have considered discharge of a promissory note under their states' counterparts to subsection (a) have held that cancellation must be accompanied by an *intent to discharge the maker*. See, *Columbia Sav. v. Zelinger*, 794 P.2d 231 (Colo. 1990); *Los Alamos Credit Union v. Bowling*, 108 N.M. 113, 767 P.2d 352 (1989); *Gover v. Home and City Sav. Bank*, 574 So. 2d 306 (Fla. App. 1991); *Richardson v. First Nat. Bank of Louisville*, 660 S.W.2d 678 (Ky. App. 1983); *Gibraltar Sav. Ass'n v. Watson*, 624 S.W.2d 650 (Tex. Civ. App. 1981); *Rubbelke v. Strecker*, 53 Wash. App. 20, 765 P.2d 314 (1988). Such intent is *not* the equivalent of a clerk's stamping the note "paid" when, in fact, it has not been paid. See, *Columbia Sav. v. Zelinger, supra*; *Richardson v. First Nat. Bank of Louisville, supra*. The Tripletts' assertion that the physical act of intentionally stamping exhibit 7 "paid" discharges the note as a matter of law is plainly incorrect in the absence of FirsTier's intent to discharge the Tripletts' indebtedness.

Although subsection (b) of § 3-605(1) did not specifically state that *surrender* of an instrument must be intentional in order to effect a discharge, "[t]he courts have glossed this section by requiring that surrender of the instrument be accompanied by an intent to discharge the party." 1 James J. White & Robert S. Summers, Uniform Commercial Code § 13-22 at 683 (3d ed. 1988). See, also, *Hubbard Realty Co. v. First Nat. Bank of Pikeville*, 704 F.2d 733 (4th Cir. 1983); *Columbia Sav. v. Zelinger, supra*; *Los Alamos Credit Union v. Bowling, supra*; *Peoples Bank of S. C., Inc. v. Robinson*, 272 S.C. 155, 249 S.E.2d 784 (1978); *Gover v. Home and City Sav. Bank, supra*; *Gibraltar Sav. Ass'n v. Watson, supra*. This is consistent with the Legislature's latest revision of Nebraska's Uniform Commercial Code. Discharge by cancellation or renunciation is now governed by Neb. U.C.C. § 3-604 (Reissue 1992), which replaced § 3-605 (Reissue 1980). Section 3-604(a) provides that "[a] person entitled to enforce an instrument . . . may discharge the obligation of a party to pay the instrument (i) by an *intentional* voluntary act, such as *surrender* of the instrument to the party . . . or *cancellation* of the instrument

. . . ." (Emphasis supplied.) This language requires that discharge be intentional, whether by cancellation *or* surrender.

All jurisdictions that have considered the issue have concluded that clerical error does not have the legal effect of canceling an existing debt or discharging an instrument. See, e.g., *Columbia Sav. v. Zelinger, supra*; *Los Alamos Credit Union v. Bowling, supra*; *Peoples Bank of S. C., Inc. v. Robinson, supra*; *Gover v. Home and City Sav. Bank, supra*; *First Galesburg Nat'l Bk. & Tr. v. Martin*, 58 Ill. App. 3d 113, 373 N.E.2d 1075 (1978); *Richardson v. First Nat. Bank of Louisville, supra*; *United Postal Sav. v. Norbob Enterprises*, 792 S.W.2d 898 (Mo. App. 1990). This is simply an application of the general rule that cancellation or surrender of an instrument has no effect when done by a person without authority from the holder of the instrument. See, *Los Alamos Credit Union v. Bowling, supra*; *Ohio Cas. Ins. Co. v. Yaklich*, 768 P.2d 1274 (Colo. App. 1989); *Mervis v. McGee*, 144 So. 2d 417 (La. App. 1962); *United Postal Sav. v. Norbob Enterprises, supra*; *Pentagon Federal Credit U. v. Edwards*, 571 S.W.2d 679 (Mo. App. 1978); *Reid v. Cramer*, 24 Wash. App. 742, 603 P.2d 851 (1979). A bank may recover even when its agents or officers have acted negligently, to prevent the maker of a note from retaining a gratuitous benefit to which he or she is not entitled. See, *Los Alamos Credit Union v. Bowling, supra*; *Bank of Naperville v. Catalano*, 86 Ill. App. 3d 1005, 408 N.E.2d 441 (1980).

Although the Tripletts, citing *J. J. Schaefer Livestock Hauling v. Gretna St. Bank*, 229 Neb. 580, 428 N.W.2d 185 (1988), and *Peterson v. Crown Financial Corp.*, 661 F.2d 287 (3d Cir. 1981), argue that subjective intent of the holder is irrelevant, both of these cases are distinguishable from the case at bar on their facts.

In *J. J. Schaefer Livestock Hauling*, the president and vice president of a bank satisfied promissory notes which the bank was holding by exercising the bank's right of setoff against the maker's account, to the detriment of third parties who were entitled to the funds in the account. The notes were canceled and returned to the maker. Only after the bank was compelled by legal process to reimburse the third parties did the bank

attempt reformation of the notes in what was essentially a claim for indemnity against the maker. This court held that surrender of the notes discharged the obligations as a matter of law. The court adopted the rationale of *Peterson* that " 'parties . . . which deal regularly in negotiable instruments, "ought to be held, as a matter of law, to an understanding of the implications which normal business practice assigns to 'intentionally cancelling [an] instrument' . . . ." [Citation omitted.] [S]ubjective intent not to discharge was irrelevant; mere intent to cancel was sufficient.' " *J. J. Schaefer Livestock Hauling v. Gretna St. Bank*, 229 Neb. at 588, 428 N.W.2d at 190, quoting *Peterson v. Crown Financial Corp., supra.*

In *Peterson*, a lender incorrectly advised a maker, Peterson, that $499,658.85 in interest was due on his note, instead of the $860,837.57 which was actually due. Peterson paid $500,000 in interest, and a vice president of the lending institution sent him a letter thanking him for his payment and advising him that this payment represented the interest due at that time. Peterson executed a new note to replace the previous note. The lender stamped the first note "canceled" and returned it to Peterson. When the second note became due 3 years later, the lender attempted to collect the deficiency in interest from the previous note.

Construing Pennsylvania law, the U.S. Court of Appeals for the Third Circuit held that the first note was discharged as a matter of law. However, the court made it clear that this was a very narrow holding:

> In such a situation . . . the lending institution is deemed as a matter of law not to have intended that the old indebtedness survive. Subjective intent *under these circumstances* is irrelevant; *in the absence of clerical error or other mistake—neither of which is claimed here—*the lender cannot, consistent with the dictates of § 3-605, remain free to insist upon the terms of a cancelled note simply because it did not subjectively intend to alter its terms.

(Emphasis omitted.) (Emphasis supplied.) *Peterson v. Crown Financial Corp.*, 661 F.2d at 292. The court explicitly stated that an underlying obligation would not be discharged by

unintentional or mistaken cancellation.

Thus, both *J. J. Schaefer Livestock Hauling* and *Peterson* are distinguishable from the present case. In *J. J. Schaefer Livestock Hauling*, the notes were intentionally canceled and surrendered by bank officers who had the authority of the holder to discharge the indebtedness. They also had actual knowledge of the transactions and their legal ramifications. No clerical error was involved in *J. J. Schaefer Livestock Hauling*. In *Peterson*, there also was no claim of clerical error. In the case at bar, FirsTier had no intention to cancel the Tripletts' indebtedness. The claimed discharge was through clerical error by an individual who had no authority to do so.

Therefore, the issue before the court is whether FirsTier possessed the requisite intent to discharge the Tripletts' indebtedness, as evidenced by exhibit 7, by either cancellation or surrender of the note. Intent is a question of fact. *Columbia Sav. v. Zelinger*, 794 P.2d 231 (Colo. 1990); *Rubbelke v. Strecker*, 53 Wash. App. 20, 765 P.2d 314 (1988); *Reid v. Cramer*, 24 Wash. App. 742, 603 P.2d 851 (1979). As previously noted, a trial court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. *Young v. Dodge Cty. Bd. of Supervisors, ante* p. 1, 493 N.W.2d 160 (1992); *Ballard v. Giltner Pub. Sch.*, 241 Neb. 970, 492 N.W.2d 855 (1992); *K & K Farming v. Federal Intermediate Credit Bank*, 237 Neb. 846, 468 N.W.2d 99 (1991).

That exhibit 7 has never been fully paid is undisputed. Two of FirsTier's vice presidents testified that FirsTier had no intention to discharge exhibit 7 without payment in full, that no one with authority to discharge exhibit 7 had done so, and that the cancellation and surrender of the note was done through clerical error. The Tripletts offered no evidence to refute this testimony.

## CONCLUSION

The district court's factual finding that the note, exhibit 7, was unintentionally released through clerical error is not clearly erroneous. We hold that the unintentional cancellation and surrender of a promissory note through clerical error do not discharge the maker of the note. The district court's judgment is

affirmed.

AFFIRMED.

GRANT, J., dissenting.

I respectfully dissent. When the promissory notes in question were made, and when payment of the notes was sought by litigation, Neb. U.C.C. § 3-605 (Reissue 1980) provided, in part: "(1) The holder of an instrument may even without consideration discharge any party . . . (b) by renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged."

The evidence shows that plaintiff renounced its rights against defendants "by a writing signed and delivered" in a letter to defendants, which letter enclosed defendants' note stamped "paid." The instrument in question was surrendered to defendants.

The majority recognizes that subsection (b) of § 3-605 did not specifically state that surrender of an instrument must be intentional in order to effect a discharge. The majority, however, adopts the view of commentators and other courts that " 'courts have glossed this section by requiring that surrender of the instrument be accompanied by an intent to discharge the party.' " When language in a statute is clear, I do not believe that courts should "gloss" legislative language to reach a goal which courts guess that the Legislature desired.

By adopting Neb. U.C.C. § 3-604 (Reissue 1992) to replace § 3-605 (Reissue 1980), the Legislature recognized that the earlier act did not give lending institutions the protection that the court has afforded such institutions in this case. Section 3-605, prior to adoption of § 3-604 (Reissue 1992), provided (without glossing) that the holder of a note could discharge the maker of the note in various ways that did not require intent. Plaintiff, the holder of the note in question, so acted, without any fraud or inducement by defendants.

To permit a bank to prevail in this litigation removes much certainty in banking transactions. The resulting uncertainty is bad for lenders and borrowers. All parties to promissory notes must now wonder if a bank means that a note is paid just because the bank says that it is paid.

I would reverse the judgment, but if the judgment must be

affirmed, I also question the amount of the judgment. At the time of trial, apparently, plaintiff contended that the principal sum of $5,717.52 was due. Most of any delay in repayment was caused specifically by plaintiff's actions in telling defendants that the note was paid. Under those circumstances, when the trial court did not reform or reinstate the note in question as plaintiff requested, I do not see how plaintiff is entitled to any interest as set out in the note. If judgment must be entered, it should be in the amount of $5,717.52. Granting interest on that judgment, of course, is different from, in effect, granting plaintiff prejudgment interest.

CAPORALE, J., dissenting.

I join in that portion of Judge Grant's dissent which declares that we ought not read into Neb. U.C.C. § 3-605 (Reissue 1980) an intent requirement which is absent from the statutory language. Indeed, we have piously pronounced that courts may not add language to the plain terms of a statute so as to either restrict or extend its meaning. See *Wittler v. Baumgartner*, 180 Neb. 446, 144 N.W.2d 62 (1966). The fact that courts of other jurisdictions saw fit to engage in acts of judicial legislation does not license us to do the same.