Gordon L. **WINKEL**, Executor of the Estate of A.N. Erpelding, Deceased, Appellant,

v.

Alphons **ERPELDING** a/k/a Alphons P. Erpelding, and Vera Erpelding, Appellees.

No. 93–1342.

Supreme Court of Iowa.

Jan. 18, 1995.

P.D. Furlong and Thomas J. Gaul, Sioux City, for appellant.

Todd A. Stowater of Cassel, McMahon, Courtney & Stowater, Algona, and David C. Shinkle, Des Moines, for appellees.

Considered by CARTER, P.J., LAVORATO, NEUMAN, SNELL, and TERNUS, JJ.

NEUMAN, Justice.

This controversy concerns a $210,000 loan made by A.N. Erpelding, now deceased, to his brother, Alphons, with whom he farmed his entire life in Kossuth County, Iowa. The question is whether the debt between the brothers has been discharged, as Alphons claims, or whether, as A.N.'s executor claims, it remains a debt payable to A.N.'s estate. The answer turns on the application of Iowa Code section 554.3605 (1993) to the record before us. Like the district court, we conclude as a matter of law that executor Gordon Winkel's skepticism about A.N.'s intention is insufficient to overcome the presumption of discharge established by proof that A.N. surrendered the notes to Alphons accompanied by his signature and the notation "Pd in full." Thus we vacate a contrary decision by the court of appeals, and affirm the district court's partial summary judgment for defendant Alphons Erpelding and his wife, Vera.

I. At the heart of this controversy lies Winkel's claim that the case is not ripe for summary judgment. He argues that an inference can be drawn from the record that A.N. had no intention to discharge the notes, thus creating a factual issue precluding summary judgment.

■ The record before us consists of the pleadings on file in the probate action, affidavits filed by Alphons and Vera Erpelding,

Winkel's affidavit, and the sworn deposition testimony of Winkel, Alphons, and A.N.'s widow, Joan Erpelding. Iowa Rule of Civil Procedure 237(c) provides that if an examination of such documents shows that there is no genuine issue as to any material fact, decision by way of summary judgment is proper. *Fogel v. Trustees of Iowa College*, 446 N.W.2d 451, 454 (Iowa 1989). To mount a successful resistance, the challenger must come forward with specific facts constituting competent evidence in support of the claim advanced. *Id.* As will be seen, Winkel has failed to meet that challenge here.

II. The record reveals that in March 1985 Alphons and his wife, Vera, executed two promissory notes, one for $10,000 and one for $200,000, each with ten-year maturity dates. The notes were payable to A.N. with interest due annually upon a rate which he was authorized to determine. Winkel, A.N.'s attorney, drafted the notes but never again saw them after he gave them to A.N. for execution.

Alphons and Vera both testified that, in April 1986, A.N. came to their home, subscribed his signature on both notes with the notation "Pd in full" and left them with Alphons and Vera. Vera testified that, in A.N.'s presence, she wrote the date of the transaction on the notes. A handwriting expert hired by Winkel confirmed that A.N.'s signature on the notes was authentic; no positive determination could be made with respect to the notation, "Pd in full."

Alphons believed that A.N.'s actions were part of his estate plan and recalled that A.N. asked him to call Winkel to review his will. Alphons never called him. Shortly after the notes were surrendered, A.N. executed a new will in which he left nothing for Alphons but did make provision for another brother. Winkel believed at the time of the execution of the new will that Alphons still owed A.N. the $210,000. He had no written memorandum, however, to confirm that recollection.

Joan Erpelding, A.N.'s widow, testified that she was privy to none of the details of A.N. or Alphons' financial dealings. She confirmed that, up until his death, A.N. was of sound mind and in complete control of his financial affairs. Although he had little formal education, A.N. was regarded as a sophisticated businessman.

Joan had no personal knowledge concerning the notes in question. A.N. told her before his death that Alphons still owed him a large sum of money. The record reveals two other outstanding debts between A.N. and Alphons totaling over $30,000. That indebtedness by Alphons to the estate is not contested.

III. There is no dispute that Iowa Code section 554.3605(1) governs the parties' conduct in this case. The statute provides:

1. The holder of an instrument may even without consideration discharge any party

 a. in any manner apparent on the face of the instrument or the endorsement, as by intentionally canceling the instrument or the party's signature by destruction or mutilation, or by striking out the party's signature; or

 b. by renouncing that holder's rights by a writing signed and delivered or *by surrender of the instrument to the party to be discharged.*

Iowa Code § 554.3605(1) (emphasis added). Winkel concedes that subparagraph *b*, not *a*, applies to the facts of this case. But he contends that the term "intentionally" found in subparagraph *a* should be read into subparagraph *b*. Alphons responds that we should not by way of interpretation add words (and thus conditions) to the statute. *See State v. Hesford*, 242 N.W.2d 256, 258 (Iowa 1976). He thus argues that proof of surrender of the notes, standing alone, is sufficient to show discharge of the indebtedness as a matter of law.

This court has not previously been asked to interpret this provision of the Uniform Commercial Code. Thus we look to other jurisdictions for guidance.

Generally, discharge under section 554.3605 is raised as an affirmative defense by a debtor who then bears the burden of proving the assertion. *Columbia Sav. v. Zellinger*, 794 P.2d 231, 234 (Colo.1990); *see Hubbard Realty Co. v. First Nat'l Bank of Pikeville*, 704 F.2d 733, 736 (4th Cir.1983).

The debtor's possession of the instrument creates a rebuttable presumption of discharge. *Columbia Sav.*, 794 P.2d at 234 (citing *Carraher v. Felix*, 534 P.2d 323, 325 (Colo.App.1975); *Vicon Construction Co. v. Pontoriero*, 27 U.C.C.Rep.Serv. 150, 1979 WL 30100 (D.N.J.1979)). However, the presumption may be rebutted if the party attempting to enforce the agreement proves a "credible denial by the creditor of intent to cancel the instrument." *Columbia Sav.*, 794 P.2d at 234 (citing J. White & R. Sommers, *Uniform Commercial Code* § 13–22, at 684 (3d ed. 1988)).

▮ Most courts agree the holder must intend discharge in order for the cancellation to take effect. *Columbia Sav.*, 794 P.2d at 235; *see Firstier Bank v. Triplett*, 242 Neb. 614, 619, 497 N.W.2d 339, 343 (1993); *Rubbelke v. Strecker*, 53 Wash.App. 20, 21, 765 P.2d 314, 315 (1988); *Guaranty Bank & Trust Co. v. Dowling*, 4 Conn.App. 376, 379–80, 494 A.2d 1216, 1219 (Conn.App.1985); *Sweeney v. First Virginia Bank of Tidewater*, 224 Va. 579, 585, 299 S.E.2d 858, 861 (1983). Clerical error, for example, would be insufficient to cancel an existing debt. Proof of fraud or mistake in the holder's discharge would suffice to indicate that the requisite intent to discharge was not present, thus resulting in annulment. *See Triplett*, 242 Neb. at 620, 497 N.W.2d at 343; *Columbia Sav.*, 794 P.2d at 235; *Guaranty Bank*, 4 Conn.App. at 380, 494 A.2d at 1219; *see also Nickle v. Lewis*, 272 N.W. 525, 526 (Iowa 1937); *Fullerton Lumber Co. v. Snouffer*, 139 Iowa 176, 177, 117 N.W. 50, 51 (1908) (pre-U.C.C. case finding, where mistake or lack of authorization involved in possession, discharge of notes becomes fact question for jury).

Courts have also held, however, that where fraud or mistake have not been alleged, and where the note has been surrendered by a party with financial experience who is cognizant of the consequences of the transaction, discharge will be ordered pursuant to U.C.C. 3–605. *See J.J. Schaefer Livestock Hauling, Inc. v. Gretna State Bank*, 229 Neb. 580, 587–88, 428 N.W.2d 185, 190–91 (1988) (citing *Peterson v. Crown Fin. Corp.*, 661 F.2d 287, 290 (3d Cir.1981)).

▮ Based on this authority, we conclude that "surrender of the instrument to the party discharged" under Iowa Code section 554.3605(1)(b) contemplates an intentional act, that is, an act free of mistake or fraud. Possession by the debtor of the surrendered notes, however, does raise a presumption of discharge.

▮ IV. The question remains whether Winkel has tendered sufficient proof to overcome Alphons' entitlement to summary judgment based on A.N.'s surrender of the notes. As we quoted from the trial court in *Hoefer v. Wisconsin Education Association Insurance Trust*, 470 N.W.2d 336, 338 (Iowa 1991) "there is no genuine issue of fact if there is no evidence." And as wisely noted by the district court here, the case boils down to no more than skepticism or surmise on Winkel's part regarding A.N.'s intentions. Such speculation and conjecture is insufficient to overcome *competent* proof that A.N. knowingly endorsed and surrendered the notes in question to Alphons and Vera, that the notes have been in their possession since April 24, 1986, and that no interest has ever been paid or demanded on either note. Moreover, Winkel has made no claim regarding A.N.'s mental capacity, or any assertion of fraud, mistake, or undue influence that might otherwise explain his conduct. In summary, we concur in the district court's conclusion that "[t]he only logical explanation for the payee's signature on the face of the notes, which have been in the maker's possession for five years prior to the payee's death, is that he intended to cancel and surrender the notes to the maker." The judgment of the district court is, therefore, affirmed.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**