INSURANCE BROKERS SERVICE,
INC., Plaintiff,

v.

MARSH & McLENNAN, a Michigan
corporation, Defendant.

No. 86. C 1747.

United States District Court,
N.D. Illinois, E.D.

June 25, 1987.

Nick J. DiGiovanni, Lord, Bissell & Brook, Chicago, Ill., for plaintiff.

Michael C. Cook, Steven R. Smith, McCullough, Campbell & Lane, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

WILLIAM T. HART, District Judge.

This action is brought by plaintiff Insurance Brokers Service, Inc., against defendant Marsh & McLennan, under theories of conversion and unjust enrichment, for the return of $70,446.90. Both parties are insurance brokers and both were middlemen in arranging insurance for a third company, Health Alliance Plan of Michigan ("the insured"). In 1984 the insured contacted defendant to find it some insurance. Defendant contacted plaintiff and plaintiff contacted Transit Casualty Company ("the insurer"), who issued a policy to the insured. The insured later cancelled the poli-

cy before its term expired, requiring the insurer to return a pro rata share of the premium and each of the middlemen to return a pro rata share of their fees.

On December 18, 1985, plaintiff sent defendant a check for $73,723.50, an amount equal to the $70,446.90 return premium owed to the insured plus the return fee owed by plaintiff to the insured. A few days later plaintiff called defendant and told defendant that they had made a mistake and demanded that defendant return the $70,446.90 component of the payment. Plaintiff alleges that it sent the check based on a mistake of fact—that the insurer had already sent the return premium to plaintiff when in fact it had not—and therefore is entitled to the return of those funds. (The insurer is now in liquidation and so has not reimbursed plaintiff for the amount sent.) At the time plaintiff informed defendant of the alleged mistake and demanded the return, defendant still had the funds in its possession. However, defendant did not return the $70,446.90; instead it added its own pro rata return fee and sent the entire amount on to the insured.

Both parties now move for summary judgment. A party is entitled to recover a payment made if the payment was made under a mistake of fact and would not have been made if the correct facts had been known. *Bank of Naperville v. Catalano*, 86 Ill.App.3d 1005, 42 Ill.Dec. 63, 66, 408 N.E.2d 441, 444 (1980); *Board of Education v. Holt*, 41 Ill.App.3d 625, 354 N.E.2d 534, 535 (1976); *Couper v. Metropolitan Life Ins. Co.*, 250 Mich. 540, 230 N.W. 929, 931 (1930) ("It is well-settled law that a payment although voluntarily made, may be recovered, even if the mistake be due to a lack of investigation."); *Kern v. City of Flint*, 125 Mich.App. 24, 335 N.W.2d 708, 709 (1983) (same).[1] However, a question of fact exists as to whether plaintiff did act under a mistake of fact or whether it deliberately sent the check before it received funds from the insurer.

This issue of fact precludes summary judgment. The sending of the check from plaintiff to defendant was a four-step process on plaintiff's part. Kenneth Bergquist, plaintiff's vice-president, had the initial responsibility for determining whether a check should be issued to defendant. He sent a note to Gula Burch, plaintiffs' accounting manager, instructing her to prepare a check to defendant. Burch prepared the check and submitted it to Michael Galeba, plaintiff's secretary-treasurer, who approved it and sent it to A. Norman DuBois, plaintiff's president, who then signed the check on behalf of plaintiff, and it was mailed.

Plaintiff points to the testimony of Galeba and DuBois that when they approved the check they believed that plaintiff had received the return premium from the insurer and that they would not have approved the check but for that mistaken belief. Burch testified that if she had known at the time she prepared the check that the funds had not been received, she would not have prepared it. However, it was Bergquist who initially determined that the check should be issued and who had direct dealings with both the insurer and defendant. Significantly, no statement by Bergquist is submitted that *he* believed plaintiff had received the funds from the insurer. No reference is made in plaintiff's memorandum or supporting materials as to why *Bergquist* decided to issue the check. Additionally, defendant provides evidence that Bergquist was being pressured by defendant to send the money and that plaintiff had forwarded payments on other occasions without having first received the funds. Based on the evidence presented, an issue of fact exists as to whether plaintiff acted under a mistake of fact or whether it sent the check hoping it would receive the funds from the insurer as reimbursement and thereby deliberately took the risk that it would not. The testimony by Burch, Galeba, and DuBois is not controlling because they may have merely relied on

---

1. Defendant contends that Michigan law applies. Plaintiff cites both Illinois and Michigan law. Neither side addresses the issue of choice of law in terms of the Illinois choice of law rules. Because the result is the same under the law of either state, it is not necessary to decide the issue of which state's law governs.

Bergquist's decision and proceeded to prepare and approve the check without any independent basis for believing or not believing that the funds had been received.

■ Defendant argues, alternatively, that even if the payment was made under a mistake of fact, defendant is not liable because it served as a "mere conduit" for the funds, in its capacity as agent and fiduciary for the insured, and that plaintiff must recover, if at all, from the insured/principal. However, defendant is liable, even though an agent, under the circumstances of this case.

> An agent who has received things from another for a disclosed or partially disclosed principal in a transaction conducted by him has a duty to return them or their proceeds if the other rescinds the transaction for a cause existing at the time of their receipt, to the extent that the agent has not, *before notice of rescission* and in good faith, changed his position.

Restatement (Second) of Agency § 339 (1958) (emphasis added); *accord* 3 C.J.S. § 363 at 176–77 ("[w]here money to which the principal is not in fact entitled has been paid to the agent for his principal, the agent is liable for its return as long as he stands in his original position and until there has been a change of circumstances by his payment to his principal or its equivalent, or he is liable if he had paid it over if he had received notice which impacted full knowledge of the payer's right to it before payment over was made"); *Smith v. Binder*, 75 Ill. 492, 495 (1874). In this case plaintiff informed defendant that the payment was made under a mistake of fact, existing at the time of the payment, before defendant forwarded the funds to the insured. Therefore defendant is liable to plaintiff for its return.

Defendant argues that while § 339 of the Restatement (Second) and C.J.S. § 363 may accurately state the general rule for "ordinary" agents, defendant, as "mere conduit," falls within an exception to the rule. Defendant argues that comment g to § 339 provides that exception. Comment g provides:

> *Agent only as custodian.* The rule stated in this Section does not apply to agents who have only custody for the principal and who have no authority from the principal to return what has been received. In such cases, there is not such a holding by the agent as creates possession in him, and hence the agent is not a proper party to a suit for their return. Thus, a clerk in a store who has received money from another for his employer is under no duty to the other to give it back upon rescission of the transaction.

While such an exception may exist for clerks in stores, it does not apply here. Defendant was given authority by the insured to search for and obtain insurance in its capacity as an insurance broker, which it did. The insured subsequently instructed defendant to terminate that policy on its behalf. Defendant had a full range of authority to act on behalf of the insured in connection with these transactions. Nothing suggests that defendant was so limited in its authority to be analogous to a shop clerk.

Defendant also argues that *Bleau v. Wright*, 110 Mich. 183, 68 N.W. 115 (1896), requires a different result. In *Bleau*, the plaintiff purchased an insurance policy from the defendants, who were agents for the insurer. When the policy was sent to the plaintiff, he was dissatisified and sued the agents for the return of his premium. The court found for the defendants on the ground that the plaintiff knew he was dealing with the agents of the insurer and dealt with them in that capacity, and that the rule was well-settled that "if the agent makes a full disclosure of the fact of his agency and of the name of his principal, he incurs no personal responsibility." *Id.* Nothing in *Bleau* indicated that the agents still had the premium paid by the plaintiff when the plaintiff sought its return. Instead, one can infer that the premium had been forwarded to the insurer, since there was a delay between the time the premium was paid and the time the insurer approved the application and issued the policy. It was only then, when the plaintiff received

the policy, that he became dissatisfied and asked for the return of his premium. Therefore *Bleau* is consistent with the rule in § 339 of the Restatement, since an agent is no longer liable for the return of funds *after* he forwards them, assuming he had no notice of rescission beforehand. *See* § 339, comment f ("A person who, as agent, receives things from a third person for the principal is not thereby under a duty to return what he has received if, before demand, he has in good faith changed his position. A delivery of the things to the principal ... is ordinarily a change of position by the agent...."); 82 A.L.R. 307 (and cases collected therein).

 Finally, defendant argues that Section 1207 of the Michigan Insurance Code of 1956, Mich.Comp.Laws Ann. § 500.1207 (West 1983), establishes that defendant cannot be liable to plaintiff. Section 1207 provides, in relevant part:

(1) Fiduciary relationship. An agent shall be a fiduciary for all moneys received or held by him in his capacity as an agent. Failure by an agent in a timely manner to turn over the moneys which he holds in a fiduciary capacity to the persons to whom they are owed is prima facie evidence of violation of the agent's fiduciary responsibility.

However, Section 1207 does not eliminate liability on the part of defendant. The first sentence in the statute merely codifies the common law rule that agents are fiduciaries. *See, e.g.,* Restatement (Second) of Agency § 13 (1958) ("An agent is a fiduciary with respect to matters within the scope of his agency."). The second sentence makes it clear that as a general rule, moneys to which the principal is entitled must be turned over promptly. It does not, however, change the rule that an agent is required to return payments from third parties if notified, while still in possession of the payment, of a mistake of fact or other grounds for rescission. The fact that Section 1207 does not provide for strict or absolute liability for failure to forward such a payment, and instead makes it only prima facie evidence of a violation of the

agent's fiduciary duty, shows that the Michigan legislature contemplated situations like this one where good cause allegedly exists for the failure to forward a payment.

IT IS THEREFORE ORDERED that:

(1) Plaintiff's motion for summary judgment is denied.

(2) Defendant's motion for summary judgment is denied.

(3) Pretrial conference is set for July 7, 1987 at 4:30 p.m.