Charles A. COHN and Lynn
B. Michaelson–Cohn,
Plaintiffs,

v.

ANTHEM LIFE AND HEALTH INSURANCE COMPANY, an insurance
corporation, Defendant.

No. 96 C 7851.

United States District Court,
N.D. Illinois,
Eastern Division.

May 19, 1997.

---

mination that certain medical expenses incurred by Michaelson–Cohn are covered by the couple's insurance policy with Anthem Life and Health Insurance Company ("Anthem"). Anthem removed the action to federal court based on preemption by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 ("ERISA"), and filed its Answer, Affirmative Defenses, and Counterclaim. The Counterclaim attempts to state a claim for unjust enrichment against the Cohns.

Anthem seeks to force the Cohns to repay $11,000 to Anthem, the amount which Anthem allegedly paid in error ("Payment"). Anthem apparently paid the $1 1,000 to the hospital for treatment not covered by the insurance policy. Anthem did not name the hospital in its Counterclaim.

The Counterclaim indicates that all parties were aware of the nature of the claims. It alleges that Anthem repeatedly sent letters to the Cohns clearly denying coverage for the treatments. Nevertheless, Anthem made the Payment for those treatments, as a result of "an inadvertent clerical/computer error." (Countercl. at ¶ 3.) It is the Cohns position that, regardless of whether the policy provided coverage, Anthem may not recover the Payment.

Erwin Cohn, Charles A. Cohn, Cohn & Cohn, Chicago, IL, for Plaintiffs.

Marta Ann Stein, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, IL, for Defendant.

## OPINION AND ORDER

NORGLE, District Judge.

Before the court is Plaintiffs/Counter–Defendants' Motion to Dismiss Counterclaim. For the following reasons, the motion is granted.

### I. FACTS

Charles A. Cohn ("Cohn") and Lynn B. Michaelson–Cohn ("Michaelson–Cohn") (collectively, "the Cohns") filed a six-count Complaint for Declaratory Judgment in the circuit court of Lake County, Illinois, on October 28, 1996. The Cohns sought a deter-

### II. DISCUSSION

The Cohns filed their Motion to Dismiss Counterclaim under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(7). First, the Cohns argue that Anthem has failed to state a claim for unjust enrichment, as the Counterclaim does not explicitly identify the actual recipient of the Payment. Second, the Cohns assert that Anthem may not state a claim for unjust enrichment, as a written contract governs the relationship between the parties. Third, and finally, the Cohns posit that the hospital which treated Michaelson–Cohn is a necessary and indispensable party as defined in Federal Rule of Civil Procedure 19; the Cohns recite this argument without citation to relevant case law. The court will address each argument in turn.

## A. *Rule 12(b)(6) Failure to State a Claim*

When considering a Rule 12(b)(6) motion to dismiss, the court must accept all allegations as true. *Flynn v. Kornwolf,* 83 F.3d 924, 925 (7th Cir.1996). In addition, the court must draw all reasonable inferences in favor of the non-movant. *Id.* The test under Rule 12(b)(6) is whether it appears beyond doubt that the plaintiff (here, Counter–Plaintiff) can prove no set of facts in support of a claim which would entitle it to relief. *Antonelli v. Sheahan,* 81 F.3d 1422, 1427 (7th Cir.1996).

### 1. *Anthem's Failure to Name the Recipient of the $11,000*

■ Federal notice pleading standards require that a complaint (or counterclaim, cross-claim, or third-party complaint) contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief." *See generally,* Fed. R.Civ.P. 8(a). The key issue is whether the complaint puts the defendant (or, in the instant case, the Counter–Defendant) on notice of the kinds of claims asserted against it. *Leatherman v. Tarrant County Narcotics Intel. & Coord. Unit,* 507 U.S. 163, 167–69, 113 S.Ct. 1160, 1163, 122 L.Ed.2d 517 (1993). The Counterclaim states that Anthem made the Payment for some of Michaelson–Cohn's medical expenses "despite the fact that no coverage was afforded for said expenses." (Countercl. at ¶ 4.) Anthem alleges that the Cohns, rather than the hospital, received and unjustly obtained a benefit from the Payment. In their Motion to Dismiss Counterclaim, the Cohns themselves refer to "the obvious facts that these funds would have been paid not to the plaintiffs but to" the hospital. (Mot. at ¶ 4.) Although an Illinois court may have dismissed Anthem's Counterclaim for failure to state that it paid the $11,000 to the hospital, that specific information was not necessary in order to notify the Cohns of the types of claims asserted against them.

### 2. *Viability of Unjust Enrichment Claim in the Presence of a Contract*

Illinois law provides the groundwork for the analysis of this substantive issue.[1] The court is mindful that, as recently noted by the United States Court of Appeals by the Seventh Circuit:

> Whenever we are called upon to decide an issue for which state law provides the rule of decision, the Rules of Decision Act, 28 U.S.C. § 1652, and the doctrine of *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), require us to ascertain what state law requires as accurately as we possibly can. Parties should not have an incentive to switch from a state courtroom to a federal courtroom in the hopes of altering the substantive law that applies to their cases. As a federal court, however, we operate under one critical limitation that does not exist for the state judiciary: when the state law is unsettled, or there is a possibility that it may change or evolve, only the state court has the authority to resolve the matter definitively.

*Trans States Airlines v. Pratt & Whitney Canada, Inc.,* 86 F.3d 725, 726 (7th Cir.1996). In the instant case, the court must apply the applicable present Illinois law.

■ Generally, Illinois law provides that the doctrine of unjust enrichment is inapplicable where a contract controls a relationship between parties. *People ex rel. Hartigan v. E & E Hauling,* 153 Ill.2d 473, 180 Ill.Dec. 271, 283, 607 N.E.2d 165, 177 (1992); *La Throp v. Bell Fed. Sav. & Loan Ass'n,* 68 Ill.2d 375, 12 Ill.Dec. 565, 572, 370 N.E.2d 188, 195 (1977). The submissions in the instant case demonstrate that the parties entered into a written contract—the insurance policy. Indeed, the primary disagreement between the parties revolves around the effect of that policy. Thus, it would seem that Anthem cannot proceed under a theory of unjust enrichment.

Nevertheless, a complaint (or counterclaim) need not even state the correct legal theory, so long as it puts defendants on the requisite notice, However, under the common law "voluntary payments doctrine, ... neither [ (1) ] money paid under a claim of right with full knowledge of the underlying facts

---

1. The parties agree that Illinois law applies to the instant issue.

and absent coercion, fraud or a superior bargaining position by the transferee nor [ (2) ] money paid under a mistake of law[,] is recoverable." *Illinois Graphics Co. v. Nickum,* 159 Ill.2d 469, 203 Ill.Dec. 463, 473, 639 N.E.2d 1282, 1292 (1994). "Mistake of law" has been defined as "an erroneous conclusion of the legal effect of known facts." *Liberty Mut. Ins. Co. v. Zambole,* 141 Ill.App.3d 803, 96 Ill.Dec. 318, 319, 491 N.E.2d 132, 133 (1986).

■ However, there is an exception to this general rule: Illinois law does permit an insurer to recover amounts paid in error where the erroneous payment occurred under a mistake of fact, and the payment would not have been made had the facts been known to the payor. *Id.; Hartford Accident & Indemn. Co. v. Chicago Housing Auth.,* 12 F.3d 92, 96 (7th Cir.1993) ("*CHA*"); *Insurance Brokers Serv., Inc. v. Marsh & McLennan,* 665 F.Supp. 649, 650 (N.D.Ill.1987). The question thus becomes whether, under the facts pleaded by Anthem in its Counterclaim, Anthem can possibly demonstrate that the Payment resulted from a mistake of fact, and that the Payment would not have been made had it known the facts.

In, *CHA* an excess liability insurer paid a claim under the mistaken belief that certain claims exceeded one million dollars. *Id.* This factual mistake led the insurer to conclude that the claim triggered coverage under its policy; this was a legal conclusion. *Id.* The United States Court of Appeals for the Seventh Circuit considered the insurer's mistake to be one of fact, because the insurer's underlying error concerned the dollar amount of the claims. *Id.* Had the mistake been one of law, the insurer would not have been entitled to reimbursement. *Id.* Courts deem insurers to have knowledge of their policy provisions; insurers may not recover legally erroneous payments made with knowledge of the underlying facts surrounding a claim.

Accordingly, Anthem's ability to recover hinges on whether Anthem acted on a mistake of fact or a mistake of law when it issued the Payment. Again, Anthem describes the Payment as "an inadvertent clerical/computer error." (Countercl. at ¶ 3.) Anthem argues that an error of this type

constitutes a mistake of fact. However, the Cohns characterize the Payment as a mistake of law as to coverage. They argue that, because Anthem admits that it both knew of the nature of the claims and disputed coverage at the time it made the Payment, the error was necessarily one of law.

In *Hartford v. Doubler,* 105 Ill.App.3d 999, 61 Ill.Dec. 592, 434 N.E.2d 1189 (1982), one Illinois court decided a similar issue. The rancher's insurance policy in *Doubler* provided excluded coverage for the loss of livestock while in a public sale barn. *Id.* at 593, 434 N.E.2d at 1190. When some of the rancher's steers were stolen from a public sale barn, the insured notified the local sheriff's office. *Id.* Both the police report and the claim forms stated that the loss occurred at the public sale barn. *Id.* A claims adjuster interviewed the rancher, who also stated that the loss occurred at the public sale barn. *Id.* After the interview and receipt of the police report and claim forms, the insurer paid the claim. *Id.* The insurer later filed suit to recover the mistaken payments, asserting that the insurance adjuster approved the claim without knowledge of the public sale barn exclusion. *Id.* at 594, 434 N.E.2d at 1191.

The *Doubler* court affirmed the trial court's grant of summary judgment in favor of the rancher. *Id.* In so ruling, the *Doubler* court deemed the insurer to have knowledge of the policy provisions, as it drafted the policy and received the request to act under the terms of that policy. *Id.* Thus, the insurer made the payment with full knowledge of the sale barn exclusion in the policy, and was a nonrecoverable mistake of law. *Id.* Consequently, the *Doubler* court held, "Because approval and payment of the ... claims were made voluntarily and without lack of knowledge or mistake of fact, any policy provisions exempting coverage have been waived." *Id.* at 595, 434 N.E.2d at 1192.

When ruling, the *Doubler* court relied on *Western & Southern Life Insurance Co. v. Brueggeman,* 323 Ill.App. 173, 55 N.E.2d 719 (1944). In *Brueggeman,* a life insurance company paid a claim on the life of an insured who was in the military when he committed suicide. Later, the life insurance

company sued the beneficiary, stating that it paid the claim "through inadvertence." *Brueggeman,* 55 N.E.2d at 720. The claims agent of the life insurance company, with full knowledge of the circumstances surrounding the death of the insured and of the policy exclusions, paid the claim despite an exclusion for military personnel. *Id.* at 721. In concentrating on the effect of the suicide, the claims agent had "overlooked" the military exclusion. *Id.*

At trial, the *Brueggeman* court held that the life insurance company could not recover because the life insurance company paid the claim voluntarily without fraud or misrepresentation, with full knowledge of the fact that the insured was in the military and of the military personnel exclusion. *Id.* at 722. In support of its ruling, the *Brueggeman* court cited the principle that an insurance company may expressly or impliedly waive any provision or condition of its policy that is included for its benefit. *Id.* Where the military personnel exclusion was included for the benefit of the life insurance company, the court found that the payment effected a waiver of the exclusion, despite the life insurance company's denial of any intention to waive it. *Id.*

Here, Anthem asserts a clerical mistake very similar to those found in *Doubler* and *Brueggeman.*[2] Anthem may argue that its mistake is distinguishable, in that the clerical employee or computer which made its mistake did not have the discretion afforded to the *Brueggeman* claims agent or Doubler insurance adjuster. However, the *Doubler* and *Brueggeman* Illinois courts held the insurance companies liable without considering the managerial level of the employees making the mistakes. Rather, the courts focused on the nature of the mistakes. Both the claims agent and insurance adjuster made the same sort of oversight or clerical mistake that Anthem claims.

Again, the court accepts as true all of Anthem's Counterclaim allegations. Most significantly, those allegations include the following: (1) "Anthem clearly and unequivocally denied Cohn's claims for coverage" of the expenses (Countercl. at ¶ 3); (2) "Through inadvertent clerical/computer error, a portion of the ... expenses were paid by Anthem despite the fact that no coverage was afforded for said expenses" (Countercl. at ¶ 4); and (3) "Cohn knew that such expenses were denied by Anthem as not covered under the Policy and had no reasonable expectation that Anthem would pay those expenses" (Countercl. at ¶ 5).

█ Thus, there can be no question that Anthem was aware of the exclusion, like the insurance companies in *Doubler* and *Brueggeman;* it had already denied coverage based on the exclusion, and it insists that even the Cohn's knew about the exclusion and the denial. Also like the insurance companies in *Doubler* and *Brueggeman,* someone at Anthem made the Payment anyway through inadvertence. Then, it follows from Anthem's own facts that, like the insurance companies in Doubler and *Brueggeman,* Anthem made the Payment "voluntarily and without lack of knowledge or mistake of fact, [and] any policy provisions exempting coverage have been waived." *See Doubler,* 434 N.E.2d at 1192. As such, under the law of Illinois, the Counterclaim must be dismissed, as Anthem cannot state any facts which would entitle it to relief.

## B. *Failure to Join an Indispensable Party*

The Cohn's also move for dismissal under Rule 12(b)(7), for failure to join an indispensable party as defined by Federal Rule of Civil Procedure 19. Because the court finds that Anthem's Counterclaim must be dismissed for failure to state a claim, it need not address the Cohn's contention that the Counterclaim should be dismissed for failure to join the hospital, an allegedly indispensable party.

---

**2.** The court acknowledges that those cases ruled against the insurance companies at summary judgment and trial respectively. The court notes that, unlike the situation in those cases, the parties in the instant case do not dispute the factual circumstances surrounding Anthem's mistake, but rather only whether such a mistake must be characterized as one of fact or one of law. The court analyses the situation in light of the law of *Doubler* and *Brueggeman* when determining whether there is any way that Anthem may state a claim in light of the facts as alleged in the Counterclaim.

However, the court notes that Rule 19 requires joinder of parties necessary for just adjudication on the merits and full relief. The Cohns cite to no authority in support of their contention that Rule 19 requires joinder of a hospital payee in an unjust enrichment claim against the beneficiary of an insurance policy; as such, their argument is waived. *See Doe v. Johnson*, 52 F.3d 1448, 1457 (7th Cir.1995) (stating that the Seventh Circuit has "made it clear that a litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point."). Since the Cohns did benefit from the Payment and it is conceivable that Anthem could have received full repayment from them, had it been able to state a claim, the court doubts the merits of such a contention. Consequently, the court would deny the Cohn's 12(b)(7) motion.

## III. CONCLUSION

For the foregoing reasons, the court grants the Motion to Dismiss Counterclaim. The parties shall appear for status on June 6, 1997, at 9:30 a.m.

IT IS SO ORDERED.