This is the second appeal in this case involving a suit on a note. We reverse and remand.
The facts are not disputed, and a simple issue is involved, i.e., is Thrash still liable on the note he signed or has Freeman released him? The facts are:
W.A. Freeman operated a Ford dealership as a sole proprietorship from 1972 until 1977. In 1977, he incorporated the dealership and issued 100 shares of stock, 60 shares to himself, and 20 each to his two children, W.A. Freeman, Jr., and Anita Freeman Deason. Thereafter the Freemans sold the stock to Thrash and Walters for $131,560 and leased the premises to Thrash and Walters under a ten-year lease. In exchange for the stock, Thrash and Walters paid part of the purchase price in cash and executed and agreed to pay, jointly and severally, three separate promissory notes *Page 1119 
to Freeman and his two adult children for the balance. The note to Freeman was in the amount of $39,408, payable in monthly installments of $692.00 each. Two separate notes in the amount of $13,156 each were payable to the children. These notes were payable at the rate of $230.68 per month each. Thrash and Walters operated the business until November 1979, when Walters bought Thrash's interest. Although not material to the case, the reason Thrash sold out to Walters was that Thrash was being divorced by his wife, who is Walters's sister. Walters paid Thrash $58,000 for his interest in the business. This arrangement was worked out between Thrash and Walters. There was some testimony by each of them that their agreement was subject to Freeman's approval. As it happened, Freeman unexpectedly came by the dealership the very day they reached this agreement and, according to the testimony most favorable to Thrash's contention that he was released from his obligation on the notes, he informed Freeman that he had sold out to Walters and that Freeman should look to Walters for his money. According to Thrash, Freeman responded, "That's fine. All I want is my money."
Walters made monthly payments on the notes until April of 1980. When the suit was filed against Thrash and Walters on the notes, the balance due on Freeman's note was $32,572.30, and on the notes of each of his children the balance was $10,856.63.
The most direct way to treat this appeal is to honestly admit that the decision in the first appeal was simply wrong. The trial court was absolutely correct in its statement of the law when it observed that:
 "The Court holds that in Alabama the law is simply this, that an oral release must be accompanied by consideration. And the Court understands that that would be in this case a benefit moving [to] Mr. Freeman, Sr., Jr., and Mrs. Deason. This Court is simply unable to see how the transfer by Mr. Thrash to Mr. Walters benefited either one of these plaintiffs. There are subsequent events which seem to show the Court that on the contrary, it was detrimental to these plaintiffs. I think this is hindsight view of it, but as a practical matter that may be the reason for the rule [sic]. Mr. Walters takes the business over and then promptly goes broke in it. I don't see where that helps the Freemans or Mrs. Deason at all."
The court's reference to the transfer from Thrash to Walters relates to Mr. Freeman's agreeing to release the stock certificate registered in Thrash's name for reissuance to Walters. Freeman held it as collateral against the joint note of Thrash and Walters. He was under no legal obligation to release it, but his having done so certainly cannot as a matter of law be treated as having conferred a benefit on himself or having conferred a detriment on Thrash.
When this case was originally before us, Thrash v. Deason,435 So.2d 69 (Ala. 1983), we inadvertently treated the appeal as if it had come from a summary judgment entered in favor of plaintiffs/payees who had brought suit on notes against the maker. As the Chief Justice pointed out in his concurring opinion, whether the impromptu response by the holders/payees of the note to the effect "that is fine" constituted a release under § 8-1-23, Ala. Code 1975, was extremely doubtful, but in view of our policy that summary judgment is inappropriate when there exists a possibility of a question of fact existing on any issue, he reluctantly concurred in the decision to reverse the summary judgment.
The appeal was, in fact, not from a summary judgment, but rather from a judgment entered after a full trial, where both sides put on evidence, and at the conclusion of which the trial court granted the motion of plaintiffs/payees for directed verdict because the defendant had not produced any evidence which would indicate a release of his obligation on the note, nor had he shown that any alleged release was based upon new consideration. We are now convinced that we should not have reversed *Page 1120 
the trial court's judgment, because there was no evidence to go to the jury on either issue. Thrash and Walters were jointly and severally liable on each note sued upon.
We have now read all of the evidence produced on the first trial and, while it could perhaps be argued that it would support an inference that Mr. Freeman's comments amounted to an oral release of Thrash, there is no evidence, not a scintilla — not a gleam or glimmer — of any evidence that any
consideration supported it.
Section 8-1-23, Ala. Code 1975, provides:
 "An obligation is extinguished by a release therefrom given to the debtor by the creditor upon a new consideration or in writing with or without new consideration." (Emphasis added.)
The cases have consistently held that new consideration to support an oral release exists only when it is shown that "something substantial which one party is not bound by law to do has been done by him, or that something he has the right to do he abstains from doing at the request of the other party."Penney v. Burns, 226 Ala. 273, 274, 146 So. 611, 612 (1933);Biggers v. Ingersoll, 236 Ala. 646, 184 So. 478 (1938).
What has Thrash done that he was not obliged by law to do in consideration of Freeman's alleged oral release? Absolutely nothing. What has Freeman requested that Thrash abstain from doing which he has a legal right to do? Again, absolutely nothing. Walters was always liable on the note. He assumed no additional liability by agreeing to pay Thrash's part. Likewise, Thrash suffered no detriment by selling his share of the business to Walters.
Thrash was paid $58,000 by Walters for his interest in the dealership. He has not shown any legal detriment to support his claim of release, nor has he shown any legal benefit flowing to Freeman. In short, the record is devoid of any evidence of consideration, and the trial court was correct in directing a verdict in favor of Freeman in the first trial, and this Court was in error in reversing the judgment there.
The judgment of the trial court is reversed, and the cause is remanded for entry of judgment consistent herewith.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, FAULKNER, ALMON, EMBRY, BEATTY and ADAMS, JJ., concur.