This appeal is from a summary judgment for the defendants, a bank and one of its officers, in an action alleging fraud. Graham Foods, Inc., Ray Graham, and Louis Graham,[1] brought this action against First Alabama Bank and Frank Hicks, alleging fraud, misrepresentation, breach of duty of good faith, breach of contract, and negligence. The trial court entered a summary judgment on all but the breach of contract and negligence counts and made that judgment final pursuant to Rule 54(b), Ala. R. Civ. P. Graham Foods argues that it *Page 860 
presented sufficient evidence of fraud to withstand the defendants' summary judgment motion.
Graham Foods is an Alabama corporation engaged in the seafood processing business in Bayou La Batre. In December 1985 Ray and Louis Graham, who are the sole officers, directors, and stockholders of Graham Foods, approached Hicks, a vice president and branch manager of First Alabama, about increasing by $50,000 a line of credit that First Alabama had extended to Graham Foods. According to the Grahams and their accountant, Louis Paul Landry III, Hicks said that First Alabama would grant the loan. Landry testified in his deposition:
 "And by about the second meeting, you know, [Hicks] said that he had all of the information that he needed to make a decision and that he was going to grant a loan to the Grahams.
". . . .
 "He told Ray that because the company was in good financial condition and because they had very adequate collateral to back up the loan and because the company was growing and obviously needed working capital, that he was going to grant them a loan.
 "Q. Okay. Did he actually say that he was going to grant them a loan or that the bank would grant them a loan?
 "A. Well, the bank. You know, he — the bank would loan them the money."
Landry recalled that meeting as having taken place in late December 1985 or early January 1986. Ray Graham (hereinafter "Graham") testified similarly about Hicks's assurances about the loan. For example, Graham testified that Hicks told him that approval of the loan by the bank's credit committee "was a formality and was no obstacle."
The complaint alleged, and Graham testified in his deposition, that, when the loan was not presented to the bank's credit committee in January, February, or March, Hicks "gave excuses"; that in March Hicks told Graham "to write checks in excess of the funds [Graham Foods] had on deposit with his institution and that those checks would be paid without an overdraft charge to the plaintiffs"; that the company issued such checks in excess of its balance on deposit, largely to purchase additional inventory and expand the operation; and that, when it received its statement on or about April 7, 1986, it discovered that the bank had not honored the checks and had charged its account $5,009.01 in account charges, most of which were for overdrafts. The complaint continued:
 "19. The plaintiffs immediately called the defendant, Hicks, and he advised the plaintiffs that they should not worry about these charges, that they would be reversed.
 "20. Subsequently, the plaintiffs received their statement of account dated April 30, 1986, which showed $6,321.85 in account charges, the bulk of which was due to checks drawn in excess of the funds they had on deposit.
 "21. The plaintiffs again called and spoke with Hicks. He again assured the plaintiffs not to be concerned about this; that the overdraft charges would be reversed.
 "22. Contrary to its agreement and, at great expense and embarrassment to the plaintiffs, the bank repeatedly dishonored checks drawn by the plaintiffs which would have been good or would not have been written had it not been for the defendant's wrongful conduct as described herein."
These allegations were substantiated not only by Graham's deposition, but also by Landry's deposition. He testified that, after the bank started charging Graham Foods for overdrafts, he went with Graham to Hicks's office, and that "at that time [Hicks] said don't worry about it, they're going to be reversed, it's just a — a bank bureaucracy and it's hard to get things done, or something to that effect, but it was going to be added back to his account."
In his deposition, Hicks denied ever assuring the Grahams that the loan would be approved and stated that, at the time of the Grahams' loan application, he did not know whether the loan would be approved or not. *Page 861 
He also testified that he told Graham that the overdraft charges could not be reversed.
The alleged fraud consists of Hicks's alleged statements that the bank would lend Graham Foods the additional money and that the overdraft charges would be "reversed," that is, credited back to the account. Graham Foods concedes that its complaint alleges only promissory fraud, because the alleged misrepresentations concerned actions to be taken in the future. Because fraud requires a misrepresentation of a materialexisting fact, an action for promissory fraud requires proof of the promisor's intent at the time of making the representation not to perform the act promised, that is, proof that he had a present intent to deceive. Purcell Co. v. Spriggs Enterprises,Inc., 431 So.2d 515 (Ala. 1983); Nelson v. Darling Shop ofBirmingham, Inc., 275 Ala. 598, 157 So.2d 23 (1963); NelsonRealty Co. v. Darling Shop of Birmingham, Inc., 267 Ala. 301,101 So.2d 78 (1957).
The parties correctly cite three recent decisions by this Court as involving similar facts. Pavco Industries, Inc. v.First Nat'l Bank of Mobile, 534 So.2d 572 (Ala. 1988); McIntyreElec. Service, Inc. v. SouthTrust Bank of Mobile,495 So.2d 1043 (Ala. 1986); and Russellville Production Credit Ass'n v.Frost, 484 So.2d 1084 (Ala. 1986). In each of those cases, the Court affirmed a judgment in favor of a creditor against a debtor's fraud claim based on allegedly promised credit that was not extended.
In Pavco Industries, a bank officer admittedly represented that he would recommend that the bank continue to extend the debtor's line of credit so long as the debtor's business continued to show improvement. The debtor argued that the officer went further, however, and promised that the bank would not exercise the demand feature of the note or reduce the amount of credit extended before a certain date. The Court affirmed a summary judgment for the bank, holding that "The materials submitted in support of the summary judgment motion made a prima facie showing that [the loan officer] had no present intent to deceive at the time he made the representations concerning continuance of the line of credit, and the materials presented in opposition did not show a genuine issue of fact in that regard." 534 So.2d at 576.
In McIntyre Electric, the complaint alleged that the bank, "through its agent Rick L. Chastain, misrepresented that it would 'stand behind McIntyre financially in order that McIntyre Electric might reach financial stability.' " 495 So.2d at 1044. The bank did renew McIntyre Electric's line of credit, which allowed it to successfully bid on and perform a subcontract, but, when McIntyre Electric had not improved its financial condition or reduced the loan balance at the end of the subcontract, the bank demanded payment of the loan. The Court affirmed a summary judgment for the bank, holding that there was no evidence of an intent not to perform the alleged promise:
 "Chastain in fact performed the alleged promise of supporting McIntyre Electric through the performance of the Payne Keller subcontract. No promise to support McIntyre Electric for an indefinite period can be inferred from the facts presented here. . . . Chastain decided to terminate McIntyre Electric's credit at the end of the Payne Keller contract, not the beginning."
495 So.2d at 1043.
In Russellville Production Credit Ass'n, an officer of the credit association allegedly promised " 'to go along with [Frost]' for the 1984 crop loan," 484 So.2d at 1086. Frost entered into a lease of cropland, allegedly in reliance on that promise, but later refused to execute a mortgage on his house when the association asked for such a mortgage to secure the loan. When that refusal led to the association's refusal to give the loan, Frost brought an action for fraud and breach of contract and won a verdict and judgment in his favor. This Court reversed the judgment because of the denial of the association's motion for directed verdict on the fraud count and rendered judgment on that count, holding *Page 862 
that there was no evidence of intent to deceive at the time the promise was made.
Just as in those cases, there was no proof in this case that Hicks intended for the bank not to increase the line of credit or that he intended to deceive the Grahams when he allegedly promised that the loan would be approved. Graham Foods argues that Hicks's testimony, that he had no way of knowing whether the credit committee would approve the loan and that he did not assure Graham and Landry of the loan's approval, is evidence that the representations to which they have testified were false. Because the evidence must be looked at in a light most favorable to the non-moving party in reviewing a summary judgment motion, Pittman v. Gattis, 534 So.2d 293 (Ala. 1988), we accept the testimony that Hicks did assure Graham and Landry that Graham Foods would receive the loan.
Nevertheless, a finding that Hicks promised the loan, coupled with the fact of his denial of such a promise, does not prove intent to deceive. It tends to prove that he recklessly made statements beyond his authority, but not that he intended that Graham Foods not receive the loan or that he intended to deceive Graham and Landry. Reckless misrepresentation will not support a charge of promissory fraud. Benetton Services Corp.v. Benedot, Inc., 551 So.2d 295 (Ala. 1989); Kennedy ElectricCo. v. Moore-Handley, Inc., 437 So.2d 76 (Ala. 1983). Thus, the assurances that Graham Foods would receive the loan will not support a fraud claim.
The alleged representations that the overdraft charges would be reversed present a somewhat different question. Hicks testified that he could not give such a credit, that he told Graham so, that it was against bank policy to do so, and that he afterwards confirmed that position with his superior. Thus, if we accept Graham and Landry's testimony that Hicksdid make such a representation and accept the portions of Hicks's testimony that he knew such a refund could not be made, a finding of intent not to perform and intent to deceive could be sustained.
Hicks and the bank argue that this alleged misrepresentation cannot support a claim of fraud because, even accepting the facts as alleged by Graham Foods, Hicks did not represent that he had the authority to reverse the charges. They point to Landry's testimony that Hicks said that, because of the "bank bureaucracy," it was "hard to get things done," and argue that, thus, Hicks did not represent that he could accomplish the reversal of charges. That testimony is susceptible of an inference, however, that Hicks implied that the reversal would be done on his authority, but that it took time to work through channels.
Thus, Graham Foods has stated and supported a colorable fraud claim regarding its allegation that, when Graham telephoned Hicks on or about April 7, Hicks assured him that the overdraft charges would be reversed and that, in reliance thereon, Graham continued to write checks on the additional $50,000 that Hicks had said was forthcoming from the bank. In this respect, the trial court erred in entering summary judgment for the defendants on the fraud claim.
The judgment is affirmed except as to the portion of the fraud claim alleging intentional misrepresentations regarding the overdraft charges, in which respect it is reversed, and the cause is remanded.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
HORNSBY, C.J., and MADDOX, ADAMS and STEAGALL, JJ., concur.
[1] The trial court granted the defendants' motion to strike Ray and Louis Graham as parties plaintiff. That ruling is not before this Court on this appeal; Graham Foods is the sole appellant.