[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 986 
BancorpSouth Bank ("the Bank") sued Thomas W. Gloor III, alleging that Gloor had defaulted on two promissory notes and seeking to recover on the debts evidenced by those notes. Gloor answered and counterclaimed, alleging breach of contract, fraud, and conversion. The Bank filed a motion for a summary judgment, with supporting evidence, on its claim and on Gloor's counterclaims. The trial court entered a summary judgment in favor of the Bank on its claim and on Gloor's counterclaims. After the denial of his postjudgment motion, Gloor timely appealed.
The following facts are undisputed. On August 17, 2000, the Bank loaned Gloor $8,500. Gloor signed a promissory note and a security agreement giving the Bank a security interest in a 1988 Mercedes-Benz automobile. On October 2, 2000, Gloor borrowed additional money from the Bank, paid off the $8,500 loan, and signed a new promissory note for $11,364.51, payable in 29 monthly installments of $304.83, with a final balloon payment of $5,265.64 due on April 1, 2003. As evidence of the indebtedness, Gloor signed the promissory note and a security agreement granting the Bank a security interest in his 1988 Mercedes-Benz automobile. The Bank was designated as the first lienholder on a certificate of title to the vehicle. The Bank's security interest was perfected pursuant to § 32-8-61, Ala. Code 1975, a part of the Alabama Uniform Certificate of Title and Antitheft Act, § 32-8-1
et seq., Ala. Code 1975, by delivery of the certificate of title to the Department of Revenue.
On October 20, 2000, Gloor obtained a third loan from the Bank in the amount of $1,675. This loan was unsecured. For the third loan, Gloor signed a promissory note obligating him to make monthly payments to the Bank in the amount of $152.01 for 12 months.
After Gloor had made one payment on the $11,364.51 note, the Bank mistakenly mailed him a copy of that note stamped "paid" as well as the certificate of title, which reflected that the Bank had released its lien on the vehicle. The parties agree that Gloor had not paid the note in full and that the release-of-lien designation was a mistake.
In support of its motion for a summary judgment, the Bank submitted, among other things, the deposition testimony of Gloor; the deposition testimony of Bruce Hathorn, the branch manager of the Bank; and the promissory notes and security agreements Gloor had signed. Gloor testified by deposition that in November 2000, after he had made only one payment on the $11,364.51 loan, he received in the mail a copy of the promissory note for $11,364.51 stamped "paid" and the certificate of title for the vehicle with the Bank's lien marked "released." Upon receipt of those documents, Gloor testified, he telephoned Bruce Hathorn at the Bank and told him that the Bank had "screwed up." Gloor also stated that he told Hathorn that *Page 987 
he knew the vehicle had "a substantial amount of loan value left" and that he needed to borrow some more money for Christmas. According to Gloor, Hathorn replied, "My god, we have screwed up. Get the title back down here; I will take care of this money you want to borrow; this loan is cancelled." Gloor said that Hathorn told him to throw away the copy of the note stamped "paid" and that Hathorn would "get [Gloor] a new note with new monies."
Hathorn testified by deposition that it was he who telephoned Gloor about the mistakenly released lien on the certificate of title, not the other way around.[1] Hathorn testified that he informed Gloor that "the bank had made a mistake and [had] inadvertently mailed the title to him released." Hathorn said that he asked Gloor to return the certificate of title and that Gloor did so. According to Hathorn, Gloor came to the Bank, returned the certificate of title marked "released," signed an application for a replacement certificate of title, and applied for another loan, stating that he needed about $8,000 to pay off existing loans at Union State Bank. Hathorn denied Gloor's loan application the same day based on Gloor's poor credit score, which, he said, had dropped in one month from 647 to 513. Hathorn said that when he rejected Gloor's loan application, Gloor did not ask that Hathorn return the certificate of title that Gloor had surrendered to the Bank. Hathorn testified that a Bank employee subsequently destroyed the certificate of title that Gloor had returned and submitted to the Department of Revenue an application for a replacement certificate of title. Hathorn acknowledged that the Bank later received a replacement certificate of title reflecting the Bank's security interest in Gloor's vehicle. The trial court's judgment states, in pertinent part:
"The undisputed facts are as follows:
 "1. Thomas W. Gloor, III became indebted to BancorpSouth Bank as a result of three transactions: a loan for $8500 in August 2000, collateralized by a 1988 Mercedes Benz automobile; a new loan in October 2000 for $11,364.51 which paid off the August note and was also collateralized by the 1988 Mercedes Benz; and an unsecured loan in the amount of $1675.00 later in October 2000.
 "2. The only payment on these debts made by Gloor was one payment on the second collateralized note; in other words, neither note was paid in full.
 "3. Sometime after October 2, 2000, BancorpSouth mistakenly mailed Gloor the certificate of title to the 1988 Mercedes Benz.
 "4. Sometime after October 2, 2000, Gloor received a copy of the October collateralized note with a `paid' stamp on it, but the copy was not the original nor was it two-sided as is the original.
 "5. Gloor knew that the sending of the certificate of title and the paid-stamped note were mistakes.
 "6. In November 2000, Gloor took the certificate of title to loan officer Bruce Hathorn in an effort to receive additional loan proceeds. He states that Hathorn promised him another loan, but later in the same day called him and told him that his loan request was denied.
 "7. Gloor did not deliver the certificate of title to the State of Alabama Department of Revenue.
"The Court finds as a matter of law: *Page 988 
 "1. One of the primary purposes of the Alabama Uniform Certificate of Title and Antitheft Act is to protect third parties from acquiring automobiles which are being sold either unlawfully or in derogation of the rights of secured creditors. In this regard its effect is similar to the Real Property Recording Act.
 "2. Had Gloor sought a new certificate of title from the State of Alabama Department of Revenue, knowing that [the] note underlying the lien shown on that title was not satisfied and had not been paid in full, he would have been perpetrating a fraud. This is something no court should countenance.
 "3. The Court finds persuasive the cases of Peoples Bank of South Carolina, Inc. v. Robinson, 272 S.C. 155, 249 S.E.2d 784 (1978), and Gover v. Home City Savings Bank, 574 So.2d 306 (Fla. 1st Dist.Ct.App. 1991). The cases of In re Blackerby, 53 B.R. 649
(Bankr.N.D.Ala. 1985), and In re Marshall, 266 B.R. 554 (Bankr.M.D.Ga. 2001), are also instructive.
 "4. Gloor is still indebted to BancorpSouth Bank on the two unpaid notes at issue in this case. See Deason v. Thrash, 465 So.2d 1118 (Ala. 1985).
 "5. BancorpSouth was not obligated to loan additional funds to Gloor when he surrendered the certificate of title to the 1988 Mercedes Benz. Gloor was merely doing that which he was required to do under the terms of the October 2000 collateralized note.
 "6. There was no meeting of the minds as to any contract terms regarding the loan application Gloor made when the certificate of title was returned to the bank.
 "7. There was no contract between Gloor and BancorpSouth Bank in November 2000 extant; therefore, there could be no breach of such a contract."
Gloor appeals the trial court's summary judgment on the Bank's claim relating to the promissory note evidencing the $11,364.51 loan and on his counterclaims relating to the same note; Gloor does not raise any issues regarding the note evidencing the $1,675 uncollateralized loan.
 Standard of Review
Appellate review of a summary judgment is de novo. Ex parteBallew, 771 So.2d 1040 (Ala. 2000). A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing "that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Rule 56(c)(3); seeLee v. City of Gadsden, 592 So.2d 1036, 1038 (Ala. 1992). If the movant meets this burden, "the burden then shifts to the nonmovant to rebut the movant's prima facie showing by `substantial evidence.'" Lee, 592 So.2d at 1038 (footnote omitted). "[S]ubstantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. of Florida,547 So.2d 870, 871 (Ala. 1989); see § 12-21-12(d), Ala. Code 1975.
 The Bank's Claim Against Gloor
Citing § 8-1-23, Ala. Code 1975, and § 7-3-604, Ala. Code 1975, Gloor argues that his promissory note was canceled and that the lien on his vehicle was discharged when the Bank surrendered to him a copy of a note marked "paid" and a certificate of title indicating that the Bank had released the lien on his vehicle. Section 8-1-23 provides: *Page 989 
 "An obligation is extinguished by a release therefrom given to the debtor by the creditor upon a new consideration or in writing with or without new consideration."
Section 7-3-604(a) provides:
 "(a) A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument (i) by an intentional voluntary act, such as surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, or the addition of words to the instrument indicating discharge, or (ii) by agreeing not to sue or otherwise renouncing rights against the party by a signed writing."
Section 8-1-23 applies to contractual obligations generally, without regard to whether the obligation is evidenced by an "instrument," whereas § 7-3-604, a part of Alabama's version of the Uniform Commercial Code ("the UCC"), specifically applies to the cancellation and surrender of an instrument, which includes a promissory note, see § 7-3-104(e), Ala. Code 1975. We conclude that § 7-3-604 is the statutory provision applicable in this case. Accord FirsTier Bank, N.A. v. Triplett, 242 Neb. 614,497 N.W.2d 339 (1993) (stating that discharge by cancellation and surrender of an instrument is governed by the Nebraska version of the UCC § 3-604).
Before the enactment of § 7-3-604, former § 7-3-605 governed the discharge and surrender of promissory notes and other negotiable instruments. See Act No. 549, Ala. Acts 1965. In 1995, however, former § 7-3-605 was repealed and replaced with the current § 7-3-604. See Act No. 668, Ala. Acts 1995. Although the issue has not arisen in any reported Alabama decision, there is a sizeable body of caselaw in other jurisdictions concerning whether the mistaken cancellation and surrender of a promissory note or other negotiable instrument discharges the debt evidenced by the note or other negotiable instrument. See generally Michael P. Sullivan, Annotation,Unintentional Cancellation of Negotiable Instrument Under UCCArticle 3, 59 A.L.R.4th 617 (1988). Because much of this caselaw is based on former UCC § 3-605, we will set out the former provision. Former § 7-3-605 provided:
 "(1) The holder of an instrument may even without consideration discharge any party:
 "(a) In any manner apparent on the face of the instrument or the indorsement, as by intentionally cancelling the instrument or the party's signature by destruction or mutilation or by striking out the party's signature; or
 "(b) By renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged.
 "(2) Neither cancellation nor renunciation without surrender of the instrument affects the title thereto."
The majority of courts in other jurisdictions have held that the cancellation and surrender of an instrument has no effect when it is the product of mistake or clerical error. See, e.g.,Guaranty Bank Trust Co. v. Dowling, 4 Conn.App. 376,494 A.2d 1216 (1985); Gover v. Home City Sav. Bank, 574 So.2d 306
(Fla.Dist.Ct.App. 1991); Richardson v. First Nat'l Bank ofLouisville, 660 S.W.2d 678 (Ky.Ct.App. 1983); FirsTier Bank,N.A. v. Triplett, supra; Los Alamos Credit Union v. Bowling,108 N.M. 113, 767 P.2d 352 (1989); and Peoples Bank of SouthCarolina, Inc. v. Robinson, 272 S.C. 155, 249 S.E.2d 784 (1978). *Page 990 
The facts of Peoples Bank of South Carolina, Inc. v. Robinson,supra, are illustrative. In Robinson, the borrowers executed a promissory note payable to the bank and a security agreement granting the bank a lien on their automobile. The bank was designated as the first lienholder on the certificate of title of the vehicle. Before the borrowers paid the note in full, the bank made a clerical error, marked the note and security agreement "paid and satisfied," and returned them to the borrower, with a release of lien noted on the certificate of title. Contending that the bank had discharged their indebtedness pursuant to the South Carolina version of § 3-605(1)(b) of the UCC, the borrowers made no further payments on the note. The bank sued for possession of the automobile, and the trial court entered a summary judgment in favor of the bank. Affirming that judgment, the Supreme Court of South Carolina held:
 "Although the record reveals that the promissory note and security agreement were marked `Paid and Satisfied' and were returned to [the borrowers] with a notarized release of lien on their certificate of title, we cannot conclude that these unintentional actions constitute a discharge as envisioned by § 36-3-605(1)(b). Commentators on the Uniform Commercial Code conclude that the courts ` . . . have glossed this section (36-3-605(1)(b)) by requiring that surrender of the instrument be accompanied by an intent to discharge the party.' J. White, R. Summers, Uniform Commercial Code at 447 (1972)."
272 S.C. at 157, 249 S.E.2d at 785.
In the present case, the Bank points out that the evidence was undisputed that the Bank had made a mistake — and that Gloor knew that the Bank had made a mistake — in surrendering to Gloor the note marked "paid" and the certificate of title with a release-of-lien designation. The Bank argues that because of the mistake it did not, as a matter of law, have the intent to discharge Gloor's indebtedness. The Bank cites § 32-8-64(a), Ala. Code 1975, a part of the Alabama Uniform Certificate of Title and Antitheft Act, for the proposition that the purported release of a lien on a vehicle certificate of title is invalid as a matter of law unless the security interest has been satisfied. Section 32-8-64(a) provides:
 "(a) Upon the satisfaction of a security interest in a vehicle for which the certificate of title is in the possession of the lienholder, he shall, within 10 days after demand execute a release of his security interest, in the space provided therefor on the certificate or as the department prescribes, and mail or deliver the certificate and release to the next lienholder named therein, or, if none, to the owner or any person who delivers to the lienholder an authorization from the owner to receive the certificate. The owner, other than a dealer holding the vehicle for resale, shall promptly cause the certificate and release to be mailed or delivered to the department, which shall release the lienholder's rights on the certificate or issue a new certificate."
(Emphasis added.)
In Smith v. American Honda Finance Corp. (In re Marshall),266 B.R. 554 (Bankr.M.D.Ga. 2001), the creditor mistakenly executed a release of its lien on the certificate of title to a vehicle that secured an installment contract with the debtor. The creditor mailed the certificate of title to the debtor. After realizing its mistake, the creditor applied for a replacement title. The debtor filed for bankruptcy protection listing the creditor as unsecured; the creditor filed a claim as a secured creditor. The trustee in bankruptcy challenged the creditor's security interest in the vehicle, *Page 991 
contending that the creditor had released its lien on the vehicle when it mailed the debtor a copy of the certificate of title marked "released." The parties stipulated that the debtor had not paid the debt and had not mailed the certificate of title marked "released" to the Alabama Department of Revenue. Applying Alabama law, the United States Bankruptcy Court for the Middle District of Georgia held that the creditor had a perfected security interest in the debtor's vehicle and that the trustee could not avoid that interest. The court explained:
 "Section 32-8-64(a) of the Alabama Code governs the issue of the release of a security interest in an automobile. After conducting a plain reading of § 32-8-64(a), the court finds that three steps must be completed in order for a lien release to be effective: (1) execution of a release on the certificate; (2) delivery of the certificate to the next lienholder or owner; and (3) delivery of the certificate to the [Department of Revenue] by the next lienholder or owner. Moreover, given the beginning language of the statute, `[u]pon satisfaction of the security interest . . .,' the court finds that the satisfaction of the lien is a prerequisite for a release to be valid. See General Electric Capital Corp. v. Spring Grove Transport, Inc. (In re Spring Grove Transport, Inc.), 202 B.R. 862, 866 (Bankr.E.D.Va. 1996) (distinguishing Ala. Code § 32-8-64(a) from Virginia law). Therefore, because the lien was not satisfied and the final step of delivery to the [Department of Revenue] was not completed, the court finds that [the creditor] did not effectively release its security interest in the [vehicle]."
Marshall, 266 B.R. at 556 (footnote omitted). See alsoSouthtrust Bank of Alabama v. Toffel (In re Blackerby),53 B.R. 649, 653 (Bankr.N.D.Ala. 1985) (holding that a bank did not release its security interest in the debtor's vehicle "simply by virtue of its mistakenly so noting [a release] on the certificate of title").
In G.E. Capital Mortgage Services, Inc. v. Neely,135 N.C.App. 187, 519 S.E.2d 553 (1999), the court held that when the mortgagors admitted that a note, which had been mistakenly canceled by the mortgagee, was never paid and that the mortgagee had canceled the debt in error, "the only issue remaining [was] purely a legal one, namely the effect of the Note being marked `Paid and Satisfied.'" 135 N.C.App. at 190,519 S.E.2d at 555. In the present case, Gloor admitted that he had made only one payment on the note and that, at the time he received the note and certificate of title from the Bank, he had not satisfied his debt to the Bank. Gloor also admitted that he knew the Bank had made a mistake in surrendering the note and certificate of title to him.
Gloor argues, however, that the "mistake" cases decided by the courts of other jurisdictions are distinguishable because, he says, none of them involved a creditor's promise to cancel a preexisting debt and to lend the debtor "new monies" in exchange for the debtor's surrendering the instrument evidencing the mistakenly discharged preexisting debt. Gloor argues that he provided the Bank with new consideration — surrendering the certificate of title with the mistakenly released lien — in exchange for the Bank's promise to cancel his debt and to make him a new loan.
Gloor's "new consideration" argument is flawed because in returning the certificate of title to the Bank he was doing only what he was already legally obligated to do according to the terms of the promissory note he had signed. Gloor agreed
 "[to] defend [the Mercedes-Benz automobile] against any other claim . . . to do whatever [the Bank] require[d] to *Page 992 
perfect [its] interest and keep [its] priority . . . [and] not do anything to harm [the Bank's] position."
In Griffin v. Hardin, 456 So.2d 1113 (Ala.Civ.App. 1984), this court held that a judgment debtor's offer to pay a weekly amount on a judgment that she was legally obligated to pay stated no consideration for a new agreement with the judgment creditor. The court stated:
 "It is an established principle that the doing or undertaking to do that which one is already under a legal obligation to do by his contract is no consideration for a secondary, subsequent or new agreement. Little v. Redditt, 264 Ala. 371, 88 So.2d 354 (1956). It is stated in 17 C.J.S. Contracts § 111 (1963): `Where a party is under a duty created or imposed by law to do what he does or promises to do, his act or promise is clearly of no value and is not sufficient consideration for a promise given in return.' Hill v. Hill, 217 Ala. 235, 115 So. 258 (1928). A promise to do what one is already under a legal obligation to do is not a sufficient consideration for another contract. South and N.A.R. Co. v. Highland Avenue and Belt Railroad Co., 119 Ala. 105, 24 So. 114 (1898)."
456 So.2d at 1116. The summary judgment in favor of the Bank on its claim against Gloor is due to be affirmed.
 Gloor's Counterclaims Against the Bank
Gloor's counterclaims against the Bank alleged breach of contract, fraud, and conversion. On appeal, Gloor makes no argument with respect to his counterclaim alleging conversion, and, therefore, we do not address it. When an appellant fails to argue an issue in brief, that issue is waived. Boshell v.Keith, 418 So.2d 89, 92 (Ala. 1982).
Gloor alleged the same operative facts for both the breach-of-contract and fraud claims: (1) that Hathorn promised to (and, Gloor says, thereby misrepresented the fact that he would) cancel the $11,364.51 loan and lend Gloor "new monies" if Gloor returned the certificate of title to the Bank; (2) that Gloor relied on Hathorn's promise and returned the certificate of title; and (3) that Hathorn rejected Gloor's loan application.
On the breach-of-contract claim, the trial court determined that no contract was formed because Gloor's surrender of the certificate of title did not constitute consideration for a new agreement. The court determined that "Gloor was merely doing that which he was required to do under the terms of the October 2000 collateralized note." The trial court also determined that the parties had no "meeting of the minds as to any contract terms regarding the loan application Gloor made when the certificate of title was returned to the Bank." Although on appeal Gloor makes no argument and cites no authority for reversing the trial court's conclusion that the parties had no meeting of the minds concerning the terms and conditions of a new loan, it is clear that the trial court's conclusion was correct. Hathorn denied making the statement that if Gloor would return the certificate of title, the Bank would lend him "new monies," but even assuming that Hathorn made the alleged statement, it constitutes, at most, an unenforceable agreement to enter into a loan agreement in the future. See Stiegler v. Dittman, 584 So.2d 507, 518 (Ala. 1991).
The trial court stated no conclusions of law with respect to the counterclaim alleging fraud. Nevertheless, we conclude that the trial court's summary judgment in favor of the Bank on Gloor's counterclaim alleging fraud is due to be affirmed because Gloor presented no evidence (1) that at the time Hathorn made the alleged promise Hathorn had no intent to perform; and (2) that Gloor was injured *Page 993 
by his reliance on Hathorn's alleged promise.
In Graham Foods, Inc. v. First Alabama Bank, 567 So.2d 859
(Ala. 1990), the supreme court held that a bank customer's allegation that a bank officer had assured him that his loan would be approved and that acceptance by the bank's credit committee "`was a formality and was no obstacle,'"567 So.2d at 860, did not state a claim for promissory fraud. The bank officer denied assuring the customer that the loan would be approved and stated that at the time the customer submitted his loan application he did not know whether the loan would be approved by the bank's credit committee. The court stated:
 "The alleged fraud consists of [the bank officer's] alleged statements that the bank would lend [the bank customer] the additional money. . . . [The bank customer] concedes that its complaint alleges only promissory fraud, because the alleged misrepresentations concerned actions to be taken in the future. Because fraud requires a misrepresentation of a material existing fact, an action for promissory fraud requires proof of the promisor's intent at the time of making the representation not to perform the act promised, that is, proof that he had a present intent to deceive."
567 So.2d at 861. The court concluded:
 "[A] finding that [the bank officer] promised the loan, coupled with the fact of his denial of such a promise, does not prove intent to deceive. It tends to prove that [the bank officer] recklessly made statements beyond his authority, but not that he intended that [the customer] not receive the loan or that he intended to deceive [the customer]. Reckless misrepresentation will not support a charge of promissory fraud. Thus, the assurances that [the customer] would receive the loan will not support a fraud claim."
567 So.2d at 862 (citation omitted). In the present case, the evidence established that Gloor's credit score was 647 on October 2, 2000, when the Bank loaned him $11,364.51. A little more than one month later, when the Bank denied the loan application that is the subject of Gloor's counterclaim alleging fraud, Gloor's credit score had dropped to 513, a score that Gloor admitted was "low." Those facts do not support the allegation that, if
Hathorn promised to lend Gloor "new monies," he had the intent to deceive Gloor and was guilty of promissory fraud.
In fraud actions, damages must be shown because injury is an essential element of the cause of action. Maring-Crawford MotorCo. v. Smith, 285 Ala. 477, 485, 233 So.2d 484, 491 (1970). Although Gloor's pleading and proof on the fraud claim are not models of clarity, Gloor apparently contends that he was injured when he surrendered "something of value" — the certificate of title — to the Bank in reliance on Hathorn's alleged promise to lend him "new monies." As we have previously discussed, Gloor suffered no legal injury by surrendering the certificate of title to the Bank. See Griffin v. Hardin, supra. See also Amason v.First State Bank of Lineville, 369 So.2d 547, 551 (Ala. 1979) (stating that "[t]o merely aver performance of what one is under a preexisting duty to perform does not satisfy the legal requirement that one show he was injured by the misrepresentations upon which he relied").
The judgment of the Jefferson Circuit Court is affirmed.
AFFIRMED.
THOMPSON, PITTMAN, MURDOCK, and BRYAN, JJ., concur.
[1] Hathorn stated that Gloor did not mention that he had also received a copy of the note stamped "paid." *Page 994