IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 17, 2009 Session

## DRAYTON D. BERKLEY
v.
## HOUSEHOLD FINANCIAL CENTER and BENEFICIAL TENNESSEE, INC.

Appeal from the Circuit Court for Shelby County
No. CT-002643-07     D'Army Bailey, Judge

No. W2009-00287-COA-R3-CV - Filed December 22, 2009

This appeal concerns an attempt to obtain the discharge of a debt. The plaintiff attorney executed two promissory notes in favor of the defendants financial institutions. The notes called for monthly payments. Just over a year later, the plaintiff mailed correspondence and a check to the institution's payment processing center. The correspondence offered an amount in excess of the monthly payment in exchange for extinguishing each debt. At the payment center, the envelopes were opened by machine and the correspondence was separated from the checks. The checks were posted to the plaintiff's account. The correspondence was forwarded to another department. The plaintiff made no more payments on the notes, and then filed a complaint for declaratory relief. The defendants answered and counterclaimed for the amount owed under the note. After conducting a bench trial, the trial court dismissed the complaint, granted a judgment on the counterclaim to the defendants, and awarded attorney's fees. The plaintiff appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed
and Remanded**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Plaintiff/Appellant Drayton D. Berkley, Memphis, Tennessee pro se

Bradley E. Trammell and Robert F. Tom, Memphis, Tennessee for the Defendants/Appellees Household Financial Center and Beneficial Tennessee, Inc.

**MEMORANDUM OPINION**[1]

---

[1]**Rule 10. Memorandum Opinion**

(continued...)

## FACTS AND PROCEDURAL HISTORY

In the fall of 2005, Plaintiff/Appellant Drayton D. Berkley ("Berkley"), an attorney licensed in Tennessee and Mississippi, executed two promissory notes in favor of Defendant/Appellee Household Financial Center.[2] Berkley executed the first note on September 7, 2005, for a loan of $7,000.49. Under the terms of the note, interest accrued at the yearly rate of 24% and Berkley was required to make monthly payments of $201.39 for sixty months. The note contained an acceleration clause, stating that, in the event of default, all payments under the note would be immediately due and owing. It also contained a clause providing for the recovery of attorney's fees incurred in enforcing the note. On October 17, 2005, Berkley executed the second note, with the same terms and amount as the first note.

From the fall of 2005 to December 2006, Berkley apparently made payments on the notes without issue.[3] In December 2006, as to each note, Berkley sent a check and a letter,[4] offering $1500 in consideration for an agreement not to sue on the debt, to Household's payment processing center in Illinois.

Household received Berkley's correspondence and the payments. It processed the payments and applied the amounts to Berkley's outstanding balance on the notes. After application of these payments, Berkley owed $8,257.35 on the first note and $9,052.84 on the second note. Thereafter, Berkley stopped making any payment on the notes. Household Financial Center then assigned the notes to its consumer lending subsidiary, Beneficial Tennessee, Inc. ("Beneficial").

---

[1](...continued)
This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Tenn. Ct. App. R. 10.

[2]Household Financial Center later assigned the notes to its consumer lending subsidiary, Beneficial Tennessee, Inc. We will refer to Household Financial Center and Beneficial Tennessee, Inc. collectively as "Household."

[3]There record indicates that Berkley missed some payments on both notes during this time period; however, Household accepted late payments and apparently never initiated the collection process.

[4]Each letter read as follows:

Enclosed please find my check . . . in the amount of $1,500.00, which constitutes consideration for your agreement and covenant not to sue on the above note and account number and a renunciation of your rights in same. Additionally, the covenant not to sue and renunciation include any claims in the nature of *quantum meruit* or quasi-contract. Endorsing the check will constitute your agreement. If you do not agree to these terms then please return the check to me in the enclosed self-addressed return envelope.

Berkley asserts that the checks bore similar notations; however, because the handwritten notations were illegible, the trial court excluded duplicates of the checks from evidence.

On May 17, 2007, Berkley filed a complaint for declaratory relief pursuant to Tennessee Code Annotated § 29-14-101, *et seq.*, naming Household as a defendant.[5]  Berkley sought a declaration that the notes had been compromised and extinguished under Tennessee Code Annotated § 47-3-604(a)(ii).  Household answered and asserted a counterclaim for the total amount due under the notes, alleging that Berkley had defaulted on the notes.  Household also sought reasonable attorney's fees pursuant to the terms of the notes.  Berkley answered Household's counterclaim, asserting eight affirmative defenses.  Discovery ensued.

Berkley deposed David O,[6] Beneficial's Branch Manager, who explained the operations at the payment processing center.  When a piece of mail is received at the payment processing center, it is opened by a machine.  Any enclosed correspondence is separated from the check payment.  The check is sent to the accounting department to be immediately credited to the proper account.  The payment processing center employee does not read the correspondence; it is placed in a separate bin and forwarded to the appropriate department.  The payment is processed before the correspondence is ever reviewed.  After reviewing duplicates of Berkley's checks, Mr. O testified that they had been endorsed on behalf of Household after being processed in this manner.

Mr. O also explained the role and authority of the payment processing center employees.  The employees are authorized only to separate payments from correspondence and to inspect the check payments.  In inspecting the check payments, the employee verifies that the account number is written on the check and that the writing is legible.  The employee is not authorized to review account activity, credit payments, or enter into agreements on behalf of Household.

Mr. O also testified that the Illinois payment processing center address is not the proper address for a customer to send correspondence disputing a debt.  He explained that Household maintains offices in Florida and Virginia specifically for such correspondence, and said that information on the Florida and Virginia offices is included in the monthly billing statements sent to each of Household's customers.

After conducting discovery, the parties filed cross-motions for summary judgment.  The trial court denied both motions, finding that there was a genuine issue of material fact as to the Household's intent when Berkley's checks were processed.

---

[5] The complaint also named Citifinancial Auto Credit and Citifinancial as defendants: however, upon a motion to sever, the trial court *sua sponte* dismissed Berkley's claims against them.  This is not raised as an issue on appeal.

[6] The deposition included the following exchange:

Q.      What is your name?
A.      My name is David O.
Q.      Spell your last name.
A.      Just one letter, just O.

On June 30, 2008, and July 1, 2008, the trial court conducted a bench trial. At the hearing, Mr. O's deposition was entered into evidence in its entirety. Berkley sought to submit into evidence duplicates of the letters and checks mailed to Household; however, the trial court excluded this evidence, finding that the duplicates were unreliable because the notations on the checks were illegible.

At the close of Berkley's proof, the trial court held that Berkley had not carried his burden of proof as to intent or the authority of Household's agents to enter into an agreement to reduce Berkley's debt. The trial court also granted a $18,175.70 judgment to Household on its counterclaim for the amount due on the notes. Pursuant to the terms of the notes, the trial court awarded attorney's fees to Household. Household requested $16,000 in attorney's fees, but the trial court awarded $9000, based on "the totality of the circumstances and the legal issues involved." On July 14, 2008, the trial court entered a written order consistent with its oral ruling.

On August 1, 2008, Berkley filed a motion to alter or amend pursuant to T.R.C.P. 59, as well as a motion for stay of execution pending appeal. Both motions were denied. Berkley now appeals.[7]

## ISSUES ON APPEAL AND STANDARD OF REVIEW

Berkley raises a plethora of issues on appeal:
1. Whether the trial court erred in failing to find that Tennessee Code Annotated § 47-3-604 is unambiguous as applied;
2. Whether the trial court erred in its construction of Tennessee Code Annotated § 47-3-604;
3. Whether the trial court erred by violating the separation of powers doctrine;
4. Whether the trial court erred in failing to find that the letters and signed checks constituted "signed writings" pursuant to Tennessee Code Annotated § 47-3-604;
5. Whether the trial court erred in expanding the unambiguous language of Tennessee Code Annotated § 47-3-604 to require that the "signed writing" conform to billing statements or inserts which were not in evidence and not part of the notes;
6. Whether the trial court erred in failing to find that the letters and signed checks were unambiguous;
7. Whether the trial court erred in refusing to admit the executed checks into evidence under Rule 1003 of the Tennessee Rules of Evidence in light of Rule 902(9) and Tennessee Code Annotated § 47-3-308;
8. Whether the trial court erred in failing to find that Household did not execute the checks in light of Household's admission that the checks were signed;
9. Whether the trial court erred in failing to find that Household was estopped to deny that it was bound by the terms of Berkley's letters and checks because it accepted the benefits thereof;

---

[7]After perfecting an appeal, Berkley filed a motion in this Court, pursuant to Rule 7 of the Tennessee Rules of Appellate Procedure, for review of the trial court's order denying stay of execution pending appeal. In an order entered November 16, 2009, we deferred our ruling on the motion. Berkley's motion is denied.

-4-

10. Whether the trial court erred in failing to find that Household was bound by the terms of the letters and signed checks;

11. Whether the trial court erred in failing to find that the letters and signed checks are presumed valid pursuant to Tennessee Code Annotated § 47-50-112;

12. Whether the trial court erred in failing to find that the letters and signed checks constituted binding contracts;

13. Whether the trial court erred in failing to find that the notes merged into the contracts formed by the letters and signed checks;

14. Whether the trial court erred in dismissing Berkley's ratification claim;

15. Whether the trial court erred in finding that Tennessee Code Annotated § 47-3-403 would not apply;

16. Whether the trial court erred by failing to analyze the reasonableness of Household's attorney fee request by utilizing the factors set forth in Rule 1.5 of the Tennessee Rules of Professional Conduct;

17. Whether the trial court erred in awarding any fee pursuant to *White v. McBride*, 937 S.W.2d 976.

Since this case was tried by the trial court sitting without a jury, we review the trial court's factual findings *de novo* accompanied by a presumption of correctness unless the preponderance of the evidence is otherwise. *Columbus Med. Servs., LLC v. Thomas*, No. W2008-00345-COA-R3-CV, 2009 WL 2462428, at *14 (Tenn. Ct. App. Aug. 13, 2009) (citing *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 644 (Tenn. Ct. App. 1999); TENN. R. APP. P. 13(d)). The trial court's legal conclusions are reviewed *de novo* with no presumption of correctness. *Id.* (citing *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn. 1993)).

## ANALYSIS

### *Discharge under T.C.A. § 47-3-604*

Berkley first contends that Household discharged the notes pursuant to Tennessee Code Annotated § 47-3-604(a)(ii) by executing a signed writing. In support of this contention, he asserts that the unambiguous terms of section 47-3-604(a)(ii) do not contain an intent element. In the alternative, he asserts that Household's intent to discharge the debts is determined from the letters he sent with the checks. He also asserts that Household's endorsement on the checks is valid and constitutes a signature under the statute, and that the trial court erred in declining to admit the duplicates of the checks into evidence. In response, Household asserts that T.C.A. § 47-3-604(a)(ii) requires intent to discharge and that the trial court did not err when it found that Berkley had not proven intent to discharge or authority to discharge.

Construction of a statute is a question of law. *Cookeville Reg'l Med. Ctr. Auth. v. Cardiac Anesthesia Servs., PLLC*, No. M2007-02561-COA-R3-CV, 2009 WL 4113586, at *3 (Tenn. Ct. App. Nov. 24, 2009) (citing *Barge v. Sadler*, 70 S.W.3d 683, 686 (Tenn. 2002)). As such, we review the trial court's conclusion *de novo* with no presumption of correctness. *Columbus Med. Servs., LLC*, 2009 WL 2462428, at *14 (citing *Vantage Tech., LLC*, 17 S.W.3d at 644).

Tennessee Code Annotated § 47-3-604(a) provides as follows:

A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument (i) by an intentional voluntary act, such as surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, or the addition of words to the instrument indicating discharge, or (ii) by agreeing not to sue or otherwise renouncing rights against the party by a signed writing.

T.C.A. § 47-3-604(a) (2001). This Court has clearly held that discharge of such a debt by voluntary act requires intent. *See Muse v. First State Bank*, 1987 WL 4022, at *1-2 (Tenn. Ct. App. Feb. 10, 1987), *no perm. app.*; *Carter County Bank v. Craft Indus., Inc.*, 639 S.W.2d 661, 663 (Tenn. Ct. App. 1982).[8] Other states applying this U.C.C. provision are consistent with the Tennessee case law. *Gover v. Home & City Sav. Bank*, 574 So.2d 306, 306-07 (Fla. Dist. Ct. App. 1991) ("We join the unanimity of other jurisdictions and hold that cancellation or renunciation of an instrument is ineffective if it is unintentional or procured by mistake." (citing *Peoples Bank of S.C., Inc. v. Robinson*, 249 S.E.2d 784 (S.C. 1978); *Reid v. Cramer*, 603 P.2d 851 (Wash. Ct. App. 1979))); *see Gloor v. BancorpSouth Bank*, 925 So.2d 984, 989 (Ala. Civ. App. 2005) (citing *Guar. Bank & Trust Co. v. Dowling*, 494 A.2d 1216 (Conn. App. Ct. 1985); *Gover v. Home & City Sav. Bank*, 574 So.2d 306 (Fla. Dist. Ct. App.1991); *Richardson v. First Nat'l Bank of Louisville*, 660 S.W.2d 678 (Ky. Ct. App.1983); *FirsTier Bank, N.A. v. Triplett*, 497 N.W.2d 339 (Neb. 1993); *Los Alamos Credit Union v. Bowling*, 767 P.2d 352 (N.M. 1989); *Peoples Bank of S.C., Inc. v. Robinson*, 249 S.E.2d 784 (S.C. 1978)). Thus, we agree with the trial court's holding that intent is required.

A finding of intent to enter an agreement is, of course, a finding of fact. *See, e.g., IJ Co., Inc. v. Collier Dev. Co., Inc.*, No. E2009-00020-COA-R3-CV, 2009 WL 3806138, at *11 (Tenn. Ct. App. Nov. 13, 2009). Therefore, Berkley's assertion that intent is presumed as a matter of law is without basis in law. From our review of the record, we conclude that the evidence does not

---

[8]The statute was amended in 1995. The prior version of the statute is as follows:

Cancelation [sic] and renunciation.-(1) The holder of an instrument may even without consideration discharge any party:

(a) in any manner apparent on the face of the instrument or the endorsement, as by intentionally canceling the instrument or the party's signature by destruction or mutilation, or by striking out the party's signature; or

(b) by renouncing his rights by a writing signed and delivered or by surrender of the instrument to the party to be discharged.

*Muse,*1987 WL 4022, at *1 (quoting T.C.A. § 47-3-605). The amendment to the statute does not affect the question in this appeal, namely, whether intent to discharge is required. Therefore, the *Muse* and *Carter County Bank* cases remain authoritative on the issue.

preponderate against the trial court's finding that Berkley produced essentially no evidence that, by processing the checks, Household intended to enter into an agreement to discharge Berkley's debt. The evidence before the trial court indicated only that the employees who handled the checks were without authority to enter into any such agreement on behalf of Household.

Berkley also contends that the trial court erred in declining to admit duplicates of the processed checks into evidence. We find no abuse of discretion in the trial court's decision. *Sanford v. Waugh & Co., Inc.*, No. M2007-02528-COA-R3-CV, 2009 WL 1910957, at *19 (Tenn. Ct. App. June 30, 2009) (citing *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004)).

## *Estoppel*

Berkley argues that Household is estopped to deny that it is bound by the terms of the letters because Household accepted the benefits of the offer to compromise by endorsing and processing the checks. In response, Household asserts that it had a preexisting right to payment for the amounts offered because Berkley was already obligated to repay the entire amount of the notes. We agree.

> Equitable estoppel, in the modern sense, arises from the 'conduct' of the party, using that word in its broadest meaning, as including his spoken or written words, his positive acts, and his silence or negative omission to do any thing. Its foundation is justice and good conscience. Its object is to prevent the unconscientious and inequitable assertion or enforcement of claims or rights which might have existed, or been enforceable by other rules of law, unless prevented by an estoppel; and its practical effect is, from motives of equity and fair dealing, to create and vest opposing rights in the party who obtains the benefit of the estoppel.

*Baliles v. Cities Serv. Co.*, 578 S.W.2d 621, 624 (Tenn., 1979) (quoting *Evans v. Belmont Land Co.*, 21 S.W. 670, 673-74 (Tenn. 1893)). Berkley cites no facts warranting application of the doctrine of estoppel. This argument is without merit.

## *Ratification*

Berkley argues that Household ratified the terms of the letters by retaining the proceeds of the checks. He also contends that the trial court failed to consider this argument. In response, Household asserts that ratification was in fact considered by the trial court, that ratification should not have been considered because it was not pled, and that there was no agreement between Berkley and Household to be ratified.

After reviewing the record, we find that, in dismissing Berkley's claim, the trial court implicitly rejected his argument on ratification.[9] We find no error in the trial court's decision.

"Ratification of a contract occurs when one approves, adopts, or confirms a contract previously executed 'by another[,] in his stead and for his benefit, but without his authority.'" *Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265, 270 (Tenn. 2001) (quoting *James v. Klar & Winterman*, 118 S.W.2d 625, 627 (Tex. Ct. App. 1938)). Here, there is no proof that the payment processing center employees entered into any "contract" to be ratified. Thus, ratification is inapplicable, and Berkley's argument is without merit.

Our holdings above pretermit all other issues raised on appeal except for those relating to attorney's fees, addressed below.

### *Attorney's Fees*

Berkley contends that Household is not entitled to an award of attorney's fees because the fee it requested was excessive. In support of this argument, Berkley cites *White v. McBride*, 937 S.W.2d 796 (Tenn. 1992). Berkley also contends that the trial court erred in failing to review the factors articulated in Rule 1.5 of the Tennessee Rules of Professional Conduct to determine if the fee was reasonable. In support of this argument, Berkley cites *Kline v. Eyrich*, 69 S.W.3d 197 (Tenn. 2006). In response, Household asserts that both *White* and *Kline* are inapplicable because they pertain to contingency fees and the case at bar concerns an award of attorney's fees pursuant to a contractual provision.

We must agree with Household's position. *White* and *Kline* are clearly inapplicable where a party is contractually entitled to an award of reasonable attorney's fees. *See Hosier v. Crye-Leike Commercial, Inc.*, No. M2000-01182-COA-R3-CV, 2001 WL 799740, at *6 (Tenn. Ct. App. July 17, 2001), *no perm. app.* "However, determining the amount of the attorney's fee that is reasonable is within the trial court's discretion." *Id.* (citing *Albright v. Mercer*, 945 S.W.2d 749, 751 (Tenn. Ct. App. 1996); *Airline Constr. Inc. v. Barr*, 807 S.W.2d 247, 270 (Tenn. Ct. App. 1990)). As such, we review a trial court's determination of the reasonableness of attorney's fees under an abuse of discretion standard. *Id.* Reviewing the record in its entirety, we must conclude that the trial court's award of $9000 in attorney's fees to Household was reasonable; indeed, it was conservative.

### *Attorney's Fees on Appeal*

On appeal, Household requests, pursuant to the terms of the notes, an award of attorney's fees and costs incurred in answering this appeal. We find such an award to be clearly warranted. Therefore, we remand the cause to the trial court for a determination of reasonable attorney's fees for this appeal.

---

[9]At the opening of the bench trial, Household made a motion to strike Berkley's ratification theory. The trial court considered the motion "premature" and did not rule upon it. The matter was not mentioned again until after the trial court announced its ruling. The trial court did not reconsider or change its ruling after ratification was raised a second time.

## CONCLUSION

The decision of the trial court is affirmed, and the cause is remanded for an award of attorney's fees on appeal. The costs of this appeal are taxed to the Appellant Drayton D. Berkley, and his surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE